914 A.2d 282

DANIELLE DAVIDSON, PLAINTIFF–RESPONDENT, v. RAYMOND A. SLATER, DEFENDANT–APPELLANT, AND DEANNA L. SLATER AND JOHN DOE(S), 1–5, ABC CORPORATION(S), 1–5, DEFENDANTS.

Argued September 12, 2006—Decided January 30, 2007.

*William J. Markwardt,* argued the cause for appellant (*Kent & McBride,* attorneys).

*Michael A. Ferrara, Jr.,* argued the cause for respondent (*Steven J. Jozwiak* and *The Ferrara Law Firm,* attorney).

*Susan Stryker,* argued the cause for *amici curiae* Insurance Council of New Jersey, American Insurance Association, Property Casualty Insurers Association of America and National Association of Mutual Insurance Companies (*Sterns & Weinroth,* attorneys; *Ms. Stryker* and *Mitchell A. Livingston,* on the brief).

*Daniel E. Rosner,* argued the cause for *amicus curiae* Association of Trial Lawyers of America–New Jersey.

*R. Peter Connell,* submitted a brief on behalf of *amicus curiae* Independent Insurance Agents & Brokers of New Jersey (*Connell, Connell & Camassa,* attorneys; *Mr. Connell* and *Jessica Ann Schlee,* on the brief).

*Cynthia M. Craig,* submitted a brief on behalf of *amicus curiae* Trial Attorneys of New Jersey (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte,* attorneys).

*Wayne J. Positan* and *Gerald H. Baker,* submitted a brief on behalf of *amicus curiae* New Jersey State Bar Association (*Mr. Positan,* President, attorney; *Mr. Baker* and *Amirali Y. Haidri,* of counsel).

Justice LaVECCHIA delivered the opinion of the Court.

This personal injury action involves the limitation-on-lawsuit or "verbal" threshold of the Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1.1 to –35. We have been asked whether, in order to vault the verbal threshold, a plaintiff must produce a comparative analysis segregating injuries suffered in the subject automobile accident from all previous injuries to the same body part, regardless of whether the plaintiff has pled a cause of action premised on the aggravation of pre-existing injuries. *See Polk v. Daconceicao,* 268 *N.J.Super.* 568, 575, 634 *A.2d* 135 (App.Div.1993) (requiring plaintiff to produce comparative—medical analysis for pre-AICRA verbal threshold claim based on aggravation of pre-existing injury or condition).

In this matter, plaintiff does not allege aggravation of pre-existing injuries. However, because she had been injured in other accidents and did not provide a comparative—medical analysis distinguishing the alleged accident injuries from all other injuries to the same body parts, the trial court dismissed her complaint on a motion for summary judgment. The Appellate Division reversed, holding that such an analysis was not required for plaintiff's non-aggravation claim to vault the verbal threshold. *David-*

*son v. Slater*, 381 *N.J.Super.* 22, 29, 884 *A.*2d 235 (2005). We granted defendant's petition for certification. 186 *N.J.* 243, 892 *A.*2d 1289 (2006).

We agree with the Appellate Division's conclusion that plaintiff's non-aggravation cause of action should not have been dismissed based on the failure to provide a comparative-medical analysis. Although the parties present their dispute as one focused on the current verbal threshold standard, our determination in this matter turns ultimately on the application of basic tort principles of causation and burden allocation as between plaintiffs and defendants. When a plaintiff alleges aggravation of pre-existing injuries as the animating theory for the claim, then plaintiff must produce comparative evidence to move forward with the causation element of that tort action. When a plaintiff does not plead aggravation of pre-existing injuries, a comparative analysis is not required to make that demonstration. AICRA does not impose on plaintiff any special requirement for a comparative-medical analysis in respect of causation in order to vault the verbal threshold.

In this matter, plaintiff can carry her burden of moving forward in her non-aggravation case by demonstrating the existence of a "permanent" injury resulting from the automobile accident without having to exclude all prior injuries to the same body part. If defendant raises a genuine factual issue about the causation of plaintiff's claimed injuries by pointing to other injuries the plaintiff may have experienced, that disputed issue of causation is for the fact-finder to decide, except in those unusual instances when no reasonable fact-finder could conclude that the permanent injury was caused by the subject accident.

## I.

### A.

The facts in the motion record reveal that plaintiff Danielle Davidson was involved in an automobile accident in the early

morning hours of August 2, 2001, when the vehicle in which she was a passenger was rear-ended by a car driven by Raymond Slater and owned by his wife, Deanna. Davidson declined treatment at the scene.

The next day, however, after experiencing lower back and neck pain, she went to the hospital emergency room. She was x-rayed, treated, and released. In answers to interrogatories, she described her symptoms from the accident as rib pain, right knee pain, neck pain and headache, upper and lower back pain, and a tingling sensation in her hands and feet. In deposition testimony taken in February 2004, she similarly described the injuries to her back and neck, and complained of having muscle spasms and "pins and needles" sensations in her feet and hands. Notably, an interrogatory specifically asked Davidson about previous injuries exacerbated by the August 2001 accident. She did not identify any.

The medical information obtained from plaintiff during discovery came largely from her internist, Dr. Scott Dorfner, who had examined her two weeks after the accident and treated her with anti-inflammatory medication, physical therapy, and medication for depression, explained to be caused by her "ongoing disabilities." Dr. Dorfner summarized his findings in a report dated December 19, 2002. Davidson had reported experiencing neck and back spasms, lower back and leg pain, dizziness, and cephalgia (headache) since the accident. Dr. Dorfner found a decreased range of motion (seventy percent of normal) in her cervical and lumbar spine. An MRI of the middle and lower spine revealed a "mild" disc protrusion between the L5 and S1 vertebrae, but no herniated disc. An MRI of plaintiff's cervical spine revealed "mild degenerative changes" at C4–C5 and C5–C6, as well as "minimal" or "small" disc protrusions at those vertebrae. Dr. Dorfner's report further stated that Davidson "continued with symptoms consistent with a disc injury" and that she had "never regained the final ranges of motion in her cervical or lumbar spine," which he described as "experienc[ing] 15% deficits."

Dr. Dorfner diagnosed lumbar disc protrusion at L5–S1, post-traumatic myofascitis [1] and headache, lumbar radiculitis [2] bilaterally, and post-traumatic cervical, dorsal (thoracic), and lumbar strain and sprain. He concluded that, "[a]t this time, the injuries [plaintiff] has suffered are permanent. They are the direct result of the motor vehicle accident which occurred on 8/2/01." In a later certification prepared in support of Davidson's lawsuit, Dr. Dorfner summarized his December 2002 findings and reiterated the diagnoses contained therein, adding:

> It is my opinion to within a reasonable degree of medical certainty that as a result of the motor vehicle accident which occurred on August 2, 2001 that Danielle Davidson has sustained a permanent injury which has not healed sufficiently to allow her to function normally and that she will not return to normal function even with ongoing medical treatment.

Davidson also was seen by a number of other physicians, including an independent physician assigned by the no-fault carrier. From that examination, Dr. Nathan Zemel opined that "[b]ased on the claimant's history, review of the available records and my examination, [plaintiff] sustained a cervical strain/sprain, lumbar strain/sprain, cervical and lumbosacral radiculitis and right lumbosacral radiculopathy." He noted that there were "no pre-existing conditions affecting her," described her prognosis as "fair," and concluded that "[i]f the history of the accident is correct, there was a cause and effect relationship between the original complaints and the reported accident."

Conflict over the cause of plaintiff's injuries arose as a result of Davidson's examination by defendant's physician, Dr. Gregory Maslow, a specialist in orthopedic surgery and sports medicine. Dr. Maslow reported Davidson's subjective symptoms of neck and

---

[1] Myofascitis, or myositis fibrosa, is defined as either an inflammation of fibrous tissue surrounding muscle or a hardening of muscle through interstitial growth of fibrous tissue. *Compare Medical Dictionary*, http://medical-dictionary.com/ (search "myofascitis"), *with Stedman's Medical Dictionary* 1275 (28th ed. 2006) (hereafter *Stedman's*).

[2] Radiculitis, or radiculopathy, is an inflammatory disorder of the spinal nerve roots. *Stedman's, supra,* at 1622; *see also N.J.A.C.* 11:3–4 App.

lower back pain, and numbness of the arms and legs, but noted that she moved about with ease and sat, stood, and walked "without apparent discomfort." Dr. Maslow found tenderness in the lower lumbar area, but no spasm, no abnormally limited ranges of motion in the back, neck, joints, or extremities, and no abnormal neurological functions. His diagnosis was sprain of the cervical, thoracic, and lumbar spine, with "absolutely no objective evidence of permanency or disability." Importantly, he observed that plaintiff "did not give an accurate history, indicating that she had not had prior neck problems but in fact she was involved in a motor vehicle accident in 1997 and did have such complaints."

Dr. Maslow was referring to an automobile accident in August 1997, in which Davidson was injured when the car in which she was riding struck a tree and then a pole. She was treated for several weeks by Dr. Dorfner. In a report dated November 20, 1997, Dr. Dorfner stated that Davidson complained of "severe neck, back, shoulder, and left rib pain" as a result of that earlier accident. X-rays taken the day of the accident "were not definitive," but Davidson showed signs of a rib fracture. She also presented tenderness, severe cervical, dorsal (thoracic) and lumbar muscle spasms, "evidence of Spina Bifida [3] involving S–1," headache, tenderness over the left knee, and decreased motion of the right shoulder and cervical and lumbar spine. He concluded that she suffered from acute cervical, dorsal (thoracic), and lumbar strain and sprain, non-displaced left rib fractures and strain and sprain, and post-traumatic myofascitis and headache, and treated her with medication for the pain and muscle spasms and with therapy. The November 1997 report also stated that she was improving but that she would "continue to suffer the effects of the very serious motor vehicle accident," namely, "headaches as well as discomfort to the cervical dorsal and lumbar spine consistent with overuse and her underlying stressful situation as a full-time college student."

---

[3] Spina bifida is a congenital defect of the vertebrae involving incomplete fusion of the parts of the vertebrae. *See Stedman's, supra,* at 1805.

Dr. Dorfner referred only briefly to the 1997 accident and injuries in his December 2002 report. He simply noted that Davidson "had been involved in a prior motor vehicle [accident] with a [rib fracture] without any further treatment and/or antecedent injuries to her neck or back." In the present action Davidson maintains that the pain from the 1997 injuries persisted only for about two months after that accident and she asserts that she had recovered fully from what she characterizes as "soft-tissue injuries suffered in the 1997 accident." [4]

### B.

On July 18, 2003, Davidson filed the instant complaint against defendants, Raymond and Deanna Slater. She sought damages for emotional, mental, and physical pain and suffering, and asserted compliance with the *N.J.S.A.* 39:6A–8(a) prerequisites for such non-economic damages. Defendants filed an answer denying the claims and asserting numerous affirmative defenses, including the "verbal threshold" defense.

Two summary judgment motions were filed by defendants, although we need be concerned here only with the second,[5] which sought judgment based on Davidson's failure to: (1) meet AICRA's verbal threshold standard; (2) produce a timely physician's certification of permanency within sixty days of the filing of the answer, as required by *N.J.S.A.* 39:6A–8(a); and (3) show proxi-

---

[4] For completeness we note that, subsequent to the 2001 accident, Davidson was involved in a third accident. On January 12, 2003, her vehicle was cut off and forced into a parked car, causing her car to flip over. Although she maintains that she was not injured, she did consult Dr. Dorfner the day after the accident. Dr. Dorfner's records indicate that Davidson suffered "multiple contusions, cervical/dorsal/lumbar strain and sprain, and post traumatic myofascitis." She also exhibited a possible rib fracture. He prescribed pain medication and further treatment "as needed." That third accident preceded Davidson's examination by some of the physicians whose records feature in this motion record.

[5] The first summary judgment motion, filed on behalf of the vehicle owner, Deanna Slater, and unopposed by plaintiff, was granted by the trial court. We refer hereinafter only to defendant Raymond Slater.

mate causation by offering, as required by *Polk*, a physician's comparative analysis of plaintiff's injuries to the same body parts involved in three separate accidents, notwithstanding that Davidson was not alleging an aggravation to a pre-existing injury. A late-filed certification of permanency was accepted by the motion court, although the record does not reflect whether the court found that the certification met the statute's requirements or that Davidson had substantially complied with the certification requirements.[6]

On the merits, the court granted summary judgment to defendant, citing a recent Appellate Division decision that had held that a " '[c]omparative analysis is required whenever previous injury to the same body part is involved' " " 'whether aggravation of the prior injury is alleged or not.' " (quoting *Bennett v. Lugo*, 368 *N.J.Super.* 466, 473, 847 *A.*2d 14 (App.Div.), *certif. denied*, 180 *N.J.* 457, 852 *A.*2d 193 (2004)). The court observed that Davidson had been involved in three separate accidents, all of which involved similar injuries to the same body parts, and noted that plaintiff's diagnosing physician failed to relate the injuries from the three accidents to each other. Based on the proofs submitted, the court determined that the only injury that might be attributed solely to the August 2001 accident was plaintiff's disc protrusion. As to that, the court observed that a physician's report addressing plaintiff's 2003 accident injuries did not mention any extant disc protrusion. The court concluded that there was insufficient "objective credible medical evidence of a permanent injury" to vault AICRA's verbal threshold, notwithstanding Dr. Dorfner's certification of permanent injury.

---

[6] The court noted the pendency of our decision in *Casinelli v. Manglapus*, 181 *N.J.* 354, 355, 858 *A.*2d 1113 (2004), which involved whether under AICRA the penalty for a late-filed physician's certification must be a dismissal. After the motion court issued its decision, we held that the late filing of a certification of permanency was akin to a discovery violation and thus subject to "discovery-type sanctions," which generally result in a penalty short of dismissal. *Id.* at 365, 858 *A.*2d 1113.

The Appellate Division reversed. *Davidson, supra,* 381 *N.J.Super.* at 30, 884 *A.*2d 235. Viewing the evidence in plaintiff's favor, the panel concluded that Dr. Dorfner's opinion that Davidson had suffered permanent injury as a result of the 2001 accident was supported by objective diagnostic tests (an MRI), and was "enough to vault the threshold set forth in *N.J.S.A.* 39:6A–8(a)." *Id.* at 27, 884 *A.*2d 235. Noting that plaintiff did not claim that the 2001 accident aggravated injuries suffered in the 1997 accident, the panel added that before the 2003 accident had taken place Dr. Dorfner had diagnosed Davidson's permanent disc injury from the 2001 accident as an injury that, as required by AICRA, would not "heal to function normally with further medical treatment." *Ibid.* (quoting *N.J.S.A.* 39:6A–8(a)). Additionally, the panel found nothing in the record indicating that the 2003 accident affected or aggravated plaintiff's disc condition or radiculopathy. *Ibid.*

In respect of plaintiff's obligation to present a comparative analysis in order to vault the AICRA verbal threshold, the panel reasoned that *Serrano v. Serrano,* 183 *N.J.* 508, 874 *A.*2d 1058 (2005), and *DiProspero v. Penn,* 183 *N.J.* 477, 874 *A.*2d 1039 (2005), brought into question the applicability of case law developed under the former verbal threshold standard. *Id.* at 28–29, 884 *A.*2d 235. Specifically, the court expressed doubt as to "whether *Polk* and its progeny continue to be viable in the context of a verbal threshold summary judgment motion." *Id.* at 29, 884 *A.*2d 235. Consistent with that perspective, the panel pointedly disagreed with other appellate decisions that had required a plaintiff to produce a *Polk* comparative analysis as part of an AICRA verbal threshold presentation and, further, that had required a comparative analysis in the context of a non-aggravation claim seeking damages for injury to a body part that previously had been injured. *Ibid.* (referencing *Lucky v. Holland,* 380 *N.J.Super.* 566, 570, 883 *A.*2d 419 (App.Div.2005), and *Bennett, supra,* 368 *N.J.Super.* at 473, 847 *A.*2d 14). The *Davidson* court concluded: .

In any event, while Dr. Dorfner does not, in his reports, compare the three accidents and their injuries, we are satisfied that a reasonable factfinder does not need him to opine that the August 2, 2001, accident uniquely caused a disc involvement that is permanent and distinct from the August 24, 1997, soft-tissue injuries and the January 12, 2003, soft-tissue injuries. Whether a jury will agree is not for us to say.

[*Id.* at 29–30, 884 *A*.2d 235.]

## II.

Defendant's petition asks this Court to resolve the question of *Polk's* continued viability in the wake of this Court's *DiProspero* and *Serrano* decisions. The decision below reflects a stark disagreement among Appellate Division panels on the question. Defendant asserts that, contrary to the reasoning of the *Davidson* appellate panel, our recent case law interpreting AICRA's verbal threshold requirements does not preclude continued application of *Polk's* comparative analysis requirement.

Alternatively, defendant asks that we find such an obligation in AICRA's formulation of the requirements for a verbal threshold cause of action to proceed. According to defendant, plaintiff must segregate prior injuries from the injuries caused by the present automobile accident because such proof is necessary to plaintiff's prima facie demonstration that the alleged permanent injury was caused by the subject accident. Moreover, defendant asserts that a comparative analysis is needed in both aggravation and non-aggravation pled cases.

Plaintiff and the amici bar organizations contend that the "*Polk*" comparative analysis requirement has been distorted over time to require comparative analyses when ordinary tort principles of causation would not impose such a requirement as part of plaintiff's case in chief. Further, they contend that *Polk* should be discarded and that fresh direction be provided as to causation and the allocation of burdens in respect of comparative medical evidence.

## III.

### A.

The parties' arguments have focused on the historical development of the verbal threshold as the catalyst for the *Polk* comparative-evidence analysis. We, therefore, summarize their perspective on the pertinent legal background to the issue before us.

Before AICRA and its current iteration of the verbal threshold was enacted, an automobile-accident victim seeking to sue for bodily injury non-economic damages had to vault an earlier version of the threshold. *See N.J.S.A.* 39:6A–8(a) (as amended by *L.* 1990, *c.* 8). Suit was permitted for nine enumerated categories of injuries. *Ibid.* When this Court was called on to settle the standard of proofs that would be necessary to satisfy the threshold under that predecessor provision, we held in *Oswin v. Shaw,* 129 *N.J.* 290, 294, 609 *A.*2d 415 (1992), that a plaintiff had to demonstrate one of the statute's nine categories of injury [7] and also prove that "the injury had a serious impact on the plaintiff and her life"—*Oswin's* so-called "subjective prong." *See id.* at 318, 609 *A.*2d 415 (quoting *Oswin v. Shaw,* 250 *N.J.Super.* 461, 470, 595 *A.*2d 522 (App.Div.1991)). *Oswin's* serious life impact test required a plaintiff to "show a nexus between the injury and the disability." *Ibid.* Thus, to prevail against a verbal threshold summary judgment motion under *Oswin,* a plaintiff was required to show "objective, credible evidence" of an injury enumerated in the statute and that that injury was the cause of a serious impact on the plaintiff's life. *Id.* at 318–19, 609 *A.*2d 415.

In addition to discussing the verbal threshold's substantive standards, *Oswin* also addressed the procedural framework within which verbal threshold cases should be examined. *See id.* at 302–

---

[7] The Court also held that a plaintiff must prove the injuries by "credible, objective medical evidence"—the "objective prong" of *Oswin, supra,* 129 *N.J.* at 314, 609 *A.*2d 415. In *Oswin,* the Court discussed the need to prevent verbal threshold lawsuits from proceeding to trial based entirely on a plaintiff's subjective complaints of pain. *Id.* at 319–20, 609 *A.*2d 415.

14, 609 *A*.2d 415. *Oswin* required that verbal threshold cases follow a summary judgment model:

> [T]he court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries ... when the plaintiff shows by credible, objective medical evidence the existence of a material dispute of fact.

[*Id.* at 294, 322, 609 *A*.2d 415.]

As the Court explained,

> [t]he verbal-threshold determination consists of two questions: (1) whether under any view of the plaintiff's injuries they can be said to fall within at least one of the nine categories that New Jersey's statute specifies, and (2) if so, whether the evidence before the court on a motion for summary judgment demonstrates a material dispute of fact regarding the nature and extent of the plaintiff's injuries. If on a summary-judgment motion the court decides, from whatever medical reports and other evidence submitted in support of and in opposition to the motion, that the injuries do not, as a matter of law, carry the plaintiff's case across the verbal threshold, then the defendant will prevail on the motion. If however the plaintiff's medical proofs survive that initial test and the court discovers, from all the information presented on the motion, a legitimate factual dispute over the nature and extent of the injuries, then resolution of that dispute is of course for the jury.

[*Id.* at 307, 609 *A*.2d 415.]

The role of comparative-analysis evidence in a verbal threshold summary judgment motion was discussed in *Polk, supra,* 268 *N.J.Super.* at 575, 634 *A*.2d 135. In *Polk* the plaintiff claimed that his pre-existing hip injury and arthritic condition were aggravated in an automobile accident. *Id.* at 570–72, 634 *A*.2d 135. The trial court granted the defendant's motion for summary judgment on the basis that the plaintiff had not cleared the No–Fault Act's verbal threshold, and the Appellate Division affirmed. *Id.* at 570, 634 *A*.2d 135. It is sufficient for present purposes to note that the courts that heard Polk's claim concluded that the results of the subjective limitation-of-motion tests that were performed on him failed to satisfy *Oswin's* objective prong, *id.* at 573, 634 *A*.2d 135, and he was unable to undergo an MRI examination, *id.* at 574, 576, 634 *A*.2d 135. Polk's physician also had submitted a list of his patient's complaints to address the serious impact that his injuries

had on his daily life. *Id.* at 574, 634 *A.*2d 135. The *Polk* panel found that the list failed to link the complaints through objective medical evidence to the injuries suffered in the accident, and added:

> A diagnosis of aggravation of a pre-existing injury or condition must be based upon a comparative analysis of the plaintiff's residuals prior to the accident with the injuries suffered in the automobile accident at issue. This must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma. Without a comparative analysis, the conclusion that the pre-accident condition has been aggravated must be deemed insufficient to overcome the threshold of *N.J.S.A.* 39:6A–8a.
>
> [*Id.* at 575, 634 *A.*2d 135.]

Thus, because Polk failed to relate through objective medical evidence his injury to his life-impact complaints, the Appellate Division affirmed the dismissal, stating that it did not need to reach the merits of the "serious life impact" issue itself. *Id.* at 576, 634 *A.*2d 135. The court found that Polk's physician "offered no objective medical basis whatsoever to substantiate plaintiff's complaints [or] to causally connect these complaints to the accident rather than to plaintiff's serious pre-existing prior medical condition." *Ibid.* The physician's assertion that Polk's condition was permanent provided no assistance in that regard because the doctor's opinion failed to delineate between the plaintiff's pre-existing conditions and the effect of the accident on those medical conditions. *Ibid.*

Following *Polk,* courts have dismissed automobile accident actions alleging aggravation of pre-existing injuries when a plaintiff failed to produce a comparative analysis. *See, e.g., Sherry v. Buonansonti,* 287 *N.J.Super.* 518, 521, 671 *A.*2d 606 (App.Div. 1996) (holding that physician's statement that CAT scan was "suggestive of degeneration" did not satisfy objective prong of *Oswin,* and further that plaintiff, who was injured in multiple accidents, failed to produce comparative analysis); *Loftus–Smith v. Henry,* 286 *N.J.Super.* 477, 491, 669 *A.*2d 852 (App.Div.1996) (affirming summary dismissal because plaintiff, who claimed ag-

gravation of pre-existing condition, failed to produce comparative analysis).

## B.

AICRA revised the proof requirements for the verbal threshold and incorporated *Oswin's* objective prong. *See Serrano, supra,* 183 *N.J.* at 515, 874 *A.*2d 1058. AICRA now requires a plaintiff to produce a physician's certified statement that the automobile accident victim suffered from a statutorily enumerated injury. *N.J.S.A.* 39:6A-8(a). The physician's certified opinion must be based on "objective clinical evidence" derived from accepted diagnostic tests and cannot be "dependent entirely upon subjective patient response." *Ibid.*

On the other hand, *Oswin's* subjective, "serious life impact" requirement was found by this Court to be incompatible with the plain language of AICRA's revised limitation-on-lawsuit standard, and inconsistent with the Legislature's expressed intention to create a substantially new verbal threshold. *See DiProspero, supra,* 183 *N.J.* at 506, 874 *A.*2d 1039. The *DiProspero* Court determined "that the Legislature did not intend to engraft the *Oswin* language onto the limitation on lawsuit threshold" and concluded that an accident victim who sues for non-economic damages "has to satisfy only one of AICRA's six threshold categories and does not have the additional requirement of proving a serious life impact." *Id.* at 481–82, 874 *A.*2d 1039.[8] To vault AICRA's verbal threshold an accident victim need only prove an injury as defined in the statute. *Serrano, supra,* 183 *N.J.* at 510, 874 *A.*2d 1058; *see also Juarez v. J.A. Salerno & Sons, Inc.,* 185 *N.J.* 332, 334, 886 *A.*2d 178 (2005) (per curiam) ("We state once again that a plaintiff need only prove that her injuries satisfy one of the threshold categories in AICRA.").

---

[8] That same day the Court also refused to create a judicial requirement that a plaintiff must prove that his injury was "serious," in addition to proving one of AICRA's six enumerated injuries. *Serrano, supra,* 183 *N.J.* at 510, 874 *A.*2d 1058.

## C.

The question of the continuing relevance of a *Polk* comparative analysis in connection with a plaintiff's verbal threshold demonstration has been the subject of much debate. Prior to our decisions in *DiProspero, Serrano,* and *Juarez,* several appellate panels affirmed the continuing vitality of *Oswin's* serious life impact requirement and, therefore, included a comparative-analysis requirement as related thereto. *See, e.g., Ostasz v. Howard,* 357 *N.J.Super.* 65, 67, 813 *A.*2d 1258 (App.Div.2003); *James v. Torres,* 354 *N.J.Super.* 586, 594–96, 808 *A.*2d 873 (App.Div.2002); *Rios v. Szivos,* 354 *N.J.Super.* 578, 580, 808 *A.*2d 868 (App.Div. 2002). One Appellate Division panel expanded the *Polk* holding and imposed a comparative-analysis requirement on plaintiffs "whenever previous injury to the same body part is involved," "whether aggravation of the prior injury is alleged or not." *Bennett, supra,* 368 *N.J.Super.* at 473, 847 *A.*2d 14.

Following our decisions in *DiProspero* and *Serrano,* several different panels addressed the continued viability of *Polk.* In *Lucky v. Holland,* 380 *N.J.Super.* 566, 570, 883 *A.*2d 419 (App.Div. 2005), one panel held that *Polk's* comparative analysis remains necessary post-AICRA whenever a plaintiff alleges injuries to body parts that previously had been injured. Several days after the issuance of the decision in *Lucky,* the appellate panel in the instant matter reached the opposite conclusion. The *Davidson* panel found that *Polk's* comparative analysis requirement likely was no longer viable in the context of verbal threshold motions in light of *DiProspero* and *Serrano,* whether aggravation of a prior injury is alleged or not. *Davidson, supra,* 381 *N.J.Super.* at 29, 884 *A.*2d 235.

Shortly after issuance of the decisions in *Lucky* and *Davidson* came *Hardison v. King,* 381 *N.J.Super.* 129, 885 *A.*2d 24 (App.Div. 2005). In *Hardison,* the plaintiff sustained injuries to his back and neck in three separate automobile accidents over a period of more than ten years. *Id.* at 131, 885 *A.*2d 24. Based on the plaintiff's medical history and diagnostic tests, including x-rays,

MRI, and EMG tests, the plaintiff's physician determined that he had recovered completely from his prior accidents before being re-injured in the third accident, and that his injury that resulted from the third accident was permanent. *Id.* at 131–33, 885 A.2d 24. The defendants conceded that the plaintiff's proofs satisfied the objective medical evidence requirement, but argued that the plaintiff was required under *Polk* to provide a comparative analysis because of the repeat nature of his injuries. *Id.* at 133, 885 A.2d 24.

After emphasizing that the plaintiff was not alleging aggravation of a prior injury or condition, the *Hardison* panel agreed with *Davidson* that *Polk* does not apply "where [a] plaintiff contends that he has incurred a permanent injury resulting solely from the subject automobile accident." *Id.* at 134–35, 885 A.2d 24. Importantly, the *Hardison* panel explained that summary judgment was inappropriate because the evidence, viewed in the plaintiff's favor, was sufficient to raise a factual dispute in respect of causation of his injuries, notwithstanding his prior accidents. *Id.* at 136–37, 885 A.2d 24. The panel found that requiring a plaintiff, in a non-aggravation-pled case, invariably to produce a comparative analysis in response to a defendant's verbal threshold motion "represent[ed] an expansion of [a] plaintiff's obligations under normal summary judgment requirements." *Id.* at 136, 885 A.2d 24.

*Hardison* stated that "[t]he elimination of *Oswin's* [serious impact] prong undercut most, if not all, of *Polk's* justification, to connect causally a plaintiff's complaints of serious impact to the subject accident." *Id.* at 133, 885 A.2d 24. However, the panel could not agree that comparative evidence would never be required in a non-aggravation case. *Id.* at 137, 885 A.2d 24.

> In our view, the need for [a] plaintiff to oppose summary judgment with comparative evidence when aggravation is not being claimed should not depend on any automatic application of *Polk.* Instead, the necessity for comparative evidence should depend upon whether the factual construct presented by the moving papers calls into question whether any reasonable jury could find that plaintiff incurred a permanent injury resulting from the subject automobile accident.
>
> [*Ibid.*]

IV.

A.

We address first the issue as it has been framed by the parties: whether *Polk's* comparative-evidence requirement is still relevant post-AICRA. Plainly, the *Polk* court pronounced its comparative-analysis requirement squarely within the framework of examining the plaintiff's serious-life-impact complaints and noting that the plaintiff in *Polk* had failed to causally link those complaints, by objective medical evidence, with the *injuries* suffered in the accident. *Polk, supra,* 268 *N.J.Super.* at 574–75, 634 *A.*2d 135 (complaining that plaintiff provided no evidence "to corroborate [his serious-life-impact complaints] or to *correlate these complaints to the trauma* of [the accident at issue]") (emphasis added); *id.* at 576, 634 *A.*2d 135 (asserting that plaintiff failed to objectively relate his life-impact complaints "to his purported objective medical proof of injury"). The linkage issue arose in the context of a claim of aggravation where the causal source of the plaintiff's subjective complaints was inherently unclear. *See id.* at 575, 634 *A.*2d 135 ("Without a comparative analysis, the conclusion that the pre-accident condition has been aggravated must be deemed insufficient to overcome the [verbal] threshold of *N.J.S.A.* 39:6A–8a."). There presently is no longer any need for a plaintiff to make a life-impact showing. *DiProspero, supra,* 183 *N.J.* at 506, 874 *A.*2d 1039.

■ That said, to the extent the parties have focused their attention on a pre– versus post–AICRA substantive requirement for comparative medical evidence, their arguments are wide of the mark. The need for a plaintiff to produce a comparative medical analysis remains dependent on traditional principles of causation and burden allocation applicable to tort cases generally. Those principles are what determine the need for comparative evidence. The question that we now answer is one that transcends the AICRA verbal threshold setting in which it has arisen.

## B.

We reviewed proximate cause-of-injury principles in *Reynolds v. Gonzalez,* 172 *N.J.* 266, 798 *A.*2d 67 (2002), and explained the fundamental aspects of the burden of production that a plaintiff bears.

> One of the underlying principles of tort law is that "an actor's conduct must not only be tortious in character but it must also be a legal cause of the invasion of another's interest." *Restatement (Second) of Torts* § 9 cmt. a (1965) (*Restatement*). It follows from that principle that the issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence. "There must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence, if found by the jury," and the resulting injury. *Germann v. Matriss,* 55 *N.J.* 193, 205, 260 *A.*2d 825 (1970). Similarly, *Prosser and Keeton on the Law of Torts* states that
>
> [t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
>
> [W. Page Keeton et. al., *Prosser & Keeton on the Law of Torts,* § 41, at 269 (5th ed. 1984) (*Prosser & Keeton*).]
>
> [*Id.* at 284, 798 *A.*2d 67.]

When aggravation of a pre-existing injury is pled by a plaintiff, comparative medical evidence is necessary as part of a plaintiff's prima facie and concomitant verbal threshold demonstration in order to isolate the physician's diagnosis of the injury or injuries that are allegedly "permanent" as a result of the subject accident. Causation is germane to the plaintiff's theory of aggravation of a pre-existing injury or new independent injury to an already injured body part. In such matters, a plaintiff generally bears the burden of production in respect of demonstrating that the accident was the proximate cause of the injury aggravation or new permanent injury to the previously injured body part. *See O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am.,* 361 *N.J.Super.* 264, 274–75, 825 *A.*2d 524 (App.Div. 2003) (explaining that in routine personal injury aggravation claims plaintiff must bear burden of production that defendant's negligence was proximate cause of injuries and damages suffered).

Such evidence provides essential support for the pled theory of a plaintiff's cause of action and a plaintiff's failure to produce such evidence can result in a directed verdict for defendant. *See Reichert v. Vegholm,* 366 *N.J.Super.* 209, 213–14, 840 *A.2d* 942 (App.Div.2004).

The parties in this action concede that a plaintiff will have to produce comparative-analysis evidence to establish a prima facie aggravation of pre-existing injuries cause of action, although plaintiff need only raise a genuine issue of material fact in respect of causation sufficient to permit a rational fact-finder to resolve the alleged dispute in her favor. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.2d* 146 (1995) ("[W]hen deciding a motion for summary judgment under *Rule* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.").

The rub comes when a plaintiff does not plead aggravation of pre-existing injuries, but there have been other injuries to the body part. Defendant seeks to burden Davidson with an initial obligation to produce comparative-analysis evidence excluding all other injuries from being the cause of the permanent injury on which the verbal threshold action is based. We reject the invitation to place such a burden of production on plaintiff in her AICRA non-aggravation-pled case. There is no such requirement to be found in AICRA. Under AICRA, to vault the verbal threshold's limitation on the right to claim non-economic damages, a plaintiff must establish that "as a result of bodily injury, arising out of the ... operation ... or use of" an automobile, she has "sustained a bodily injury which results in" one of the enumerated categories of serious injury, including "a permanent injury within a reasonable degree of medical probability." *N.J.S.A.* 39:6A–8(a).

Aside from the circumstance of medically segregating a claimed *aggravation* of a pre-existing injury from the fresh injury to a body part, a plaintiff need not produce affirmative medical evidence segregating what plaintiff considers to be non-causes of the alleged injury in order to avoid a directed verdict under *N.J.S.A.* 39:6A–8(a)'s express standards.

In this case, the issue of aggravation was raised not by plaintiff but by defendant. That was his prerogative. Indeed, this Court has long recognized that every defendant, in response to an allegation that his negligence has caused injury, possesses the right of demonstrating by competent evidence that that injury "could" have been caused, wholly or partly, by an earlier accident or by a pre-existing condition. *Paxton v. Misiuk*, 34 *N.J.* 453, 460–61, 170 *A.2d* 16 (1961); *see also McCray v. Chrucky*, 66 *N.J.Super.* 124, 128–29, 168 *A.2d* 660 (App.Div.1961) (noting that defendant must persuade jury that damages were due to pre-existing condition).

In *Oswin, supra,* the Court established that verbal threshold cases should follow the summary judgment model—i.e., the court should decide "whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories," and the jury should decide "factual disputes." [9] 129 *N.J.* at 294, 609 *A.2d* 415. That summary judgment framework still applies to AICRA's refined standard for vaulting the verbal threshold. If plaintiff produces evidence on all basic elements of her pled tort action, then her case can proceed to trial except when the defendant can show that there is no genuine factual issue as to an element of the plaintiff's tort claim.

---

[9] That said, we note that AICRA's insistence on a physician certification on permanency, based on objective medical testing to support the diagnosis, should prevent verbal threshold cases from proceeding to trial when the action is based on a victim's subjective complaints. Compliance with that requirement remains a gatekeeper duty of the motion courts.

We presume that defendants routinely will inquire during discovery about a plaintiff's prior injuries.  In respect of the element of causation specifically, a plaintiff will risk dismissal on summary judgment if the defendant can show that no reasonable fact-finder could conclude that the defendant's negligence caused plaintiff's alleged permanent injury.  Thus, the plaintiff who does not prepare for comparative medical evidence is at risk of failing to raise a jury-worthy factual issue about whether the subject accident caused the injuries.  *See Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146; *Hardison, supra,* 381 *N.J.Super.* at 137, 885 *A.*2d 24.  At the very least, plaintiff will be forced to address causation before the fact-finder and properly may be held to the theory of the case as pled.  *Jardine Estates, Inc. v. Koppel,* 24 *N.J.* 536, 542, 133 *A.*2d 1 (1957) (noting that parties are ordinarily limited in their proofs at trial to issues as set forth in pleadings and pre-trial order); *see also Rothman Realty Corp. v. Bereck,* 73 *N.J.* 590, 598, 376 *A.*2d 902 (1977) (stating same and expressing courts' general disfavor of plaintiff's late attempt to change cause of action's theory).

### C.

Applying those principles to the instant matter, we hold that Davidson was under no obligation under AICRA to produce, as part of her prima facie presentation in this non-aggravation cause of action, a comparative analysis in order to satisfy the verbal threshold proof requirements.  As between defendant's medical proofs and those presented by plaintiff, the trial court was obliged to determine whether a genuine issue of proximate cause had been presented.  In that respect, we affirm the Appellate Division judgment.

Defendant raises, however, an additional argument in the petition for certification.  Defendant asserts that the Appellate Division improperly relied on Dr. Dorfner's certification of permanency exclusively when reversing the trial court's grant of summary judgment.  According to defendant the certificate was a mere net opinion.  We begin by noting that both the trial and appellate

courts considered the certification of permanency *as part of* the medical evidence presented to the court. *See Davidson, supra,* 381 *N.J.Super.* at 24–27, 884 *A.*2d 235 (noting extensively plaintiff's history of accidents and numerous medical examination reports produced, and concluding that, *"[i]n light of these facts,* [the]" physician's certification of permanency "should have been enough to vault the [verbal] threshold") (emphasis added).

 The Appellate Division relied on plaintiff's physician's certification in conjunction with her purported objective medical evidence. As defendant notes, a court is not bound to rely solely on a physician's certification to vault a plaintiff over the verbal threshold. *See Rios v. Szivos,* 354 *N.J.Super.* 578, 584, 808 *A.*2d 868 (App.Div.2002) (relying in part on statutory language and Governor's conditional veto message to conclude that AICRA's certification requirement is " 'anti-fraud measure' " that " 'is necessary to state a claim, not sufficient to establish one' ") (quoting *Governor's Recommendations for Reconsideration Statement to Senate Bill 3,* at 5 (April 27, 1998)). However, that does not appear to be what happened here.

Davidson claims a permanent injury as defined in *N.J.S.A.* 39:6A–8(a) ("An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment."). Medical tests on which plaintiff's objective medical proofs can rest "may not be experimental in nature or dependent entirely upon subjective patient response," and any diagnostic tests must be "administered in accordance with" *N.J.S.A.* 39:6A–4.7. *See N.J.A.C.* 11:3–4.5. The provisions requiring valid diagnostic procedures "were intended to ensure that only honest and reliable medical evidence and testing procedures would be introduced to prove that an injury meets the threshold." *DiProspero, supra,* 183 *N.J.* at 489, 874 *A.*2d 1039.

According to plaintiff's medical reports, her radiculopathy/radiculitis was diagnosed by the straight leg raising test, which does not appear on the list of accepted diagnostic procedures. *See*

*N.J.A.C.* 11:3–4.5. On the other hand, plaintiff's bulging disc was diagnosed with an MRI examination, a recognized objective diagnostic device. *See N.J.A.C.* 11:3–4.5(b)(5). All other diagnostic methods performed on plaintiff, including range of motion tests and her subjective symptomology (pain and tingling), are not on the list or are otherwise expressly declared to be invalid diagnostic methods. *See N.J.S.A.* 39:6A–8(a); *N.J.A.C.* 11:3–4.5. On the record before us, only plaintiff's disc protrusion seems to satisfy AICRA's requirements in respect of diagnostic procedures; however, even the evidence of disc protrusion is unclear on the question of permanency.

The claim of permanency appears supported only by Dr. Dorfner's assertion in his December 2002 report, reiterated in his certification, that plaintiff's condition was permanent, and another treating physician's opinion that plaintiff had "reached a plateau in her recovery." [10] Those physicians diagnosed plaintiff as suffering from several conditions in addition to a disc irregularity. Neither physician specified which injuries were designated "permanent" or identified the objective medical evidence to support the diagnosis of permanency. The Appellate Division's precise analysis in respect of plaintiff's various claims is not apparent and, therefore, we cannot resolve those questions. We remand for further explication of this record by the Appellate Division in light of the proof requirements for objective medical evidence of permanency.

## V.

For the foregoing reasons, the judgment of the Appellate Division is affirmed with modification and the matter is remanded to the Appellate Division for further proceedings consistent with this opinion.

---

[10] Dr. Zemel expressed a similar conclusion, as did Dr. Richard Naftulin, plaintiff's treating orthopedist. Dr. Zemel however did not identify any accepted diagnostic tests used in the diagnosis, nor did he diagnose a disc bulge.

*For affirmance as modified/remandment*—Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—6.

*Opposed*—None.