**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2617-15T1

C.O., R.O., and G.M.O.,

      Plaintiffs-Appellants,

   v.

PINE HILL SCHOOL DISTRICT BOARD
OF EDUCATION, DOUG ENDEE, and
PATRICIA ISRAEL,

      Defendants-Respondents,

   and

C.M., and A.M.,

      Defendants,

   and

PINE HILL SCHOOL DISTRICT BOARD
OF EDUCATION, DOUG ENDEE and
PATRICIA ISRAEL,

      Third-Party Plaintiffs,

   v.

D.C.M.,

      Third-Party Defendant.

_____

Argued September 19, 2017 — Decided October 26, 2017

Before Judges Fisher and Fasciale.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4862-13.

Brian D. Kent argued the cause for appellants (Laffey, Bucci & Kent, LLP, attorneys; Mr. Kent and Samuel I. Reich (Laffey, Bucci & Kent, LLP) of the Pennsylvania bar, admitted pro hac vice, on the briefs).

Cherylee O. Melcher argued the cause for respondents (Hill Wallack LLP, attorneys; Ms. Melcher, on the brief).

PER CURIAM

Sometime in or about April through August 2008, when plaintiff C.O. (Carolyn, a fictitious name) was thirteen years old, she was sexually abused by D.C.M. (Donald, a fictitious name), the father of her friend A.M. (Arlene, a fictitious name). Carolyn came forward in January 2009 and Donald was arrested. During the months that followed, while out on bail, Donald repeatedly drove up and down Carolyn's street, causing the judge presiding in the pending criminal matter to issue a restraining order. Donald later pleaded guilty to and was sentenced on offenses relating to his abuse of Carolyn and other girls.

In the Fall of 2009, Carolyn began her high school freshman year in the Pine Hill School District. Because Arlene attended the same school, school administrators met with Carolyn's mother to address concerns naturally arising from the circumstances,

including the potential for Donald's appearance on the premises. Carolyn and her parents allege in their complaint in this civil action that, despite these recognized concerns, Carolyn and Arlene were placed in the same homeroom, Arlene would appear at times in or near some of Carolyn's classes, and they were assigned nearby lockers. In short, rather than attempt to insulate Carolyn from the sequelae of her abuser's conduct, plaintiffs' allegations — if true — suggested the school district went out of its way to permit an already troublesome situation to fester and devolve. Plaintiffs allege Carolyn was repeatedly bullied by Arlene and other students, and that the situation even boiled over into a physical altercation between the two girls that prompted criminal proceedings and both girls' suspension. Even then, according to plaintiffs, the school district took no action to alleviate the volatile circumstances, and the harassment continued. The school district also, according to plaintiffs, occasionally allowed Donald onto school property despite the existing restraining order. Plaintiffs allege that these and other acts and omissions caused Carolyn great stress and interfered with her ability to attend the school.

A-2617-15T1

In 2013, Carolyn, no longer a minor, commenced this action[1] against the school district and two of its representatives (collectively referred to in this opinion as "the school-district defendants").[2] Carolyn and her parents asserted that the school-district defendants were negligent, grossly negligent, careless and reckless in failing to, among other things, "promulgate a safe educational environment meant to prevent and cope with harassment, bullying or intimidation."

In 2015, after nearly two years of discovery, Carolyn moved to amend her complaint to include a claim based on the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. The motion was denied, as was a subsequent motion for reconsideration.

The school-district defendants thereafter moved for summary judgment. The judge granted the motion by concluding the evidence did not support Carolyn's claim of a permanent injury as required by N.J.S.A. 59:9-2, and by determining that Carolyn had not

---

[1] Her parents are also plaintiffs.

[2] Any pending claims asserted against Donald, his wife, and Arlene, are not implicated by this appeal. We were advised by way of a response to earlier inquiries by the Clerk's office, and again at oral argument, that default was entered against these parties. It is not clear to us whether judgment has been entered against any of them, posing a procedural question whether finality has been achieved in the trial court so as to permit an appeal as of right of the orders in question. We, however, need not inquire further, since, even if the orders were not final orders, we grant leave to appeal out of time.

alleged, nor provided sufficient evidence to demonstrate, that the individual defendants Doug Endee and Patricia Israel engaged in willful misconduct as the means of avoiding application of N.J.S.A. 59:9-2.

Plaintiffs appeal the October 9, 2015 order denying their motion to amend to include an LAD claim and the February 5, 2016 order granting summary judgment in favor of the school-district defendants. We conclude the judge was mistaken in both respects and, therefore, reverse and remand for further proceedings.

I

The motion to amend need not long detain us. Absent a demonstration that the amendment would be "futile" because it would, if permitted, "fail" on its merits "and, hence, allowing the amendment would be a useless endeavor[,]" Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006), motions to amend pleadings are to be liberally granted "even if the ultimate merits of the amendment are uncertain," Prime Accounting Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013). See also Rosario v. Marco Constr. & Mgmt., Inc., 443 N.J. Super. 345, 352 (App. Div. 2016); Bustamante v. Bor. of Paramus, 413 N.J. Super. 276, 298 (App. Div. 2010).

The judge did not find that the assertion of the nascent LAD claim would be futile; that is, we do not discern that his oral decision was driven by a belief that the LAD claim could not withstand a motion to dismiss.[3] Instead, the judge concluded that it was too late in the game to permit an amendment. The record reveals, however, and the judge so observed, that the assertion of this new claim would not require further discovery or the joinder of additional defendants. Plaintiffs sought only to add an additional theory of recovery to those already asserted against these defendants. Because the school-district defendants would not have been unduly prejudiced by the amendment, and because the assertion of an LAD claim would not have delayed the proceedings, we reverse the October 9, 2015 order and turn to the order granting summary judgment.

II

In seeking summary judgment, the school-district defendants, which consist of a public entity (the school district) and two

---

[3] In referring to the deposition testimony of the school principal to which plaintiffs alluded in seeking leave to amend, the judge suggested only that the principal's conclusory statements were not evidential. Even if the judge is correct about that, it does not demonstrate why the available evidence would not support an LAD claim. In other words, the principal's deposition testimony was the impetus for the motion; we do not understand plaintiffs' position as suggesting that the principal's deposition testimony is all that may be amassed to show an LAD violation.

A-2617-15T1

public employees (Endee and Israel), relied on N.J.S.A. 59:9-2(d), which bars an award of damages for pain and suffering against them absent proof of a permanent and substantial injury.[4] The problem with applying this verbal threshold is that Carolyn — if we accept, as we must, the truth of her allegations — was subjected to a series of separate but arguably overlapping traumatic circumstances generated by different parties.[5] Certainly, the acts or omissions of the school-district defendants did not cause or factor into the sexual abuse suffered by Carolyn. Nor did the school-district defendants participate in the traumatic events that immediately followed, i.e., Donald's stalking of her in the months preceding the commencement of her freshman year in high school. The experts upon whom Carolyn relies to prove her claims

---

[4] The entire provision states: "No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600." In Brooks v. Odom, 150 N.J. 395, 406 (1997), the Court held that, to meet this statute's requirements, the alleged loss must be "substantial."

[5] Carolyn also argues that Endee and Israel, as public employees, may not take advantage of the verbal threshold because they acted willfully, citing N.J.S.A. 59:3-14. In response, the school-district defendants argue that Carolyn did not allege in her complaint that the public employees acted "willfully." In light of our disposition of this appeal, we need not reach these issues.

A-2617-15T1

acknowledge that those pre-school events had already caused psychiatric injuries. Carolyn had, for example, thoughts of suicide in June 2009 before the start of the school year. But, because we accept Carolyn's allegations as true, we assume she arrived for her freshman year in a fragile state, as the school-district defendants recognized when they held a meeting to discuss the situation with Carolyn's mother.

We further assume, as the Brill[6] standard requires, that the school-district defendants' response to these circumstances fell short of what might arguably be expected from such professionals and, consequently, Carolyn was subjected to bullying and harassment from Arlene, the daughter of her abuser, as well as others. And, when this problem repeatedly manifested, it has been alleged the school-district defendants continued to fail her.

In responding to the school-district defendants' invocation of the verbal threshold, Carolyn argues that because she was sexually molested she must be deemed to have vaulted the obstacles imposed by N.J.S.A. 59:9-2(d). For this proposition, she relies on the reported trial court opinion in A.C.R. v. Vara, 264 N.J. Super. 565, 571-72 (Law Div. 1992), where the verbal-threshold requirements were met — indeed the A.C.R. judge found that a

---

[6] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

presumption arises — upon proof of a child's sexual molestation even though "the injury only manifests itself in psychological symptoms." The Supreme Court approved of this concept in <u>Collins v. Union County Jail</u>, 150 <u>N.J.</u> 407, 420-21 (1997), when it recognized that a claim of "alleged permanent psychological harm in the form of post-traumatic stress disorder [PTSD] resulting from the rape by [a] corrections officer[] constitutes a 'permanent loss of a bodily function' within the meaning of <u>N.J.S.A.</u> 59:9-2(d)."

Carolyn's urging of a presumption of compliance with the verbal threshold because she was sexually molested, however, represents an oversimplification of the issues before us. But so too is the school-district defendants' argument that Carolyn cannot vault the verbal threshold because her experts acknowledged she suffered PTSD at Donald's hands and the symptoms in question manifested prior to her attendance at their school. The issue is more nuanced than either of those positions.

To be sure, the school-district defendants correctly argue they may be held responsible only for injuries <u>they</u> caused and are not liable for injuries Donald inflicted. They argue that to the extent psychiatric injuries occurred, they occurred prior to their involvement with Carolyn — and those preexisting injuries cannot be considered in determining whether whatever injuries they

allegedly caused are sufficient to vault the statutory verbal threshold. In short, the record may suggest no more than that the school-district defendants' involvement with Carolyn — if wrongful — only aggravated her preexisting PTSD. But that doesn't necessarily mean that the verbal threshold cannot be vaulted here.

In many ways, the present circumstances, and the trial judge's disposition of the motion, are reminiscent of the difficulties our courts encountered in automobile litigation governed by the verbal threshold contained in automobile no-fault legislation, where a preexisting injury was aggravated by a subsequent auto accident. In Polk v. Daconceicao, 268 N.J. Super. 568, 575 (App. Div. 1993), we held that when a plaintiff claims an auto accident alleged in a complaint aggravated a preexisting injury, to avoid summary judgment the plaintiff is required to provide a comparative-medical analysis so that the plaintiff's residuals prior to the accident might be correlated with the injuries suffered in the accident in question. Polk formulated a rule that, "[w]ithout a comparative analysis, the conclusion that the pre-accident condition has been aggravated must be deemed insufficient to overcome" the no-fault verbal threshold. Ibid. In Davidson v. Slater, 189 N.J. 166, 186-87 (2007), however, our Supreme Court rejected Polk; the Court found nothing in the then-existing no-fault verbal threshold statute to impose on a plaintiff an

obligation to present a comparative analysis to fend off a summary-judgment motion.

Although we deal here with a different statutory threshold, the automobile no-fault statute's purposes and policies — the reduction of bodily injury claims for non-economic damages in insubstantial claims — are similar. See Collins, supra, 150 N.J. at 413 (recognizing that N.J.S.A. 59:9-2(d) was intended to "preclude recovery for pain and suffering based on subjective evidence or minor incidents"). Our approach in applying N.J.S.A. 59:9-2 — the Tort Claims Act's verbal threshold — should be consistent with the automobile no-fault verbal threshold.

For these reasons, we conclude that Carolyn was not required — at the summary-judgment stage — to delineate between those psychiatric injuries Donald caused and those caused or aggravated by the school-district defendants. Carolyn's allegations that her PTSD was caused or further aggravated by the school-related events suffices to defeat summary judgment. It will be for the jury to ascertain the extent to which the injuries inflicted by Donald were aggravated by the acts or omissions of the school-district defendants and if that aggravation was sufficient to vault the threshold contained in N.J.S.A. 59:9-2(d).

In short, as recognized in Davidson, supra, 189 N.J. at 186, a plaintiff injured by separate torts must ultimately "produce

11

comparative-analysis evidence to establish a prima facie aggravation of pre-existing injuries" at trial, but, at the summary-judgment stage, a plaintiff "need only raise a genuine issue of material fact in respect of causation sufficient to permit a rational fact-finder to resolve the alleged dispute in her favor." There was a sufficient assertion of a substantial aggravation of Carolyn's preexisting conditions contained in her experts' reports to militate against the entry of summary judgment; indeed, the expert opinions provided in opposition to the school-district defendants' summary-judgment motion broadly blame all defendants for the PTSD from which Carolyn suffered between 2008 and 2013. For example, Dr. Joel B. Glass opined, "with[in] reasonable medical psychiatric certainty," that between 2008 (when molested by Donald) and 2013 (years encompassing Carolyn's school attendance), Carolyn experienced PTSD "characterized by anxiety, depression, crying spells hypersomnia, social withdrawal, suicidal thoughts, apathy, poor concentration hyperphagia, anxiety attacks, nightmares and intrusive thoughts." Dr. Glass asserted that the PTSD was "the direct result of her sexual abuse at the hands of [Donald] and the bullying and harassment she endured as well as feeling unsafe at school and unsupported by school officials" (emphasis added).

The limited question before us is whether this and the other similar expert report represented sufficient evidence of a permanent injury — at the summary judgment stage — to vault the statutory verbal threshold. Carolyn's experts professed that she suffered permanent and substantial psychiatric injuries that conform with the Brooks requirement of a substantial injury. 150 N.J. at 406. In adhering to the principles expressed in Davidson, which we view as providing the proper framework for applying N.J.S.A. 59:9-2(d) in similar circumstances, we conclude that the summary-judgment motion should have been denied.

Both orders under review are reversed and the matter remanded for trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2617-15T1