268 N.J. Super. 568 (1993)
634 A.2d 135
DOUGLAS POLK, PLAINTIFF-APPELLANT,
v.
MANUEL B. DACONCEICAO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1993.
Decided December 7, 1993.
*570 Before Judges PRESSLER, DREIER and KLEINER.
Edward M. Colligan argued the cause for the appellant.
Kevin J. DeCoursey argued the cause for the respondent (O'Toole and Couch, attorneys; DeCoursey, of counsel and on the brief).
The opinion of the Court was delivered by KLEINER, J.S.C. (temporarily assigned).
Plaintiff Douglas Polk filed suit for damages allegedly sustained in a motor vehicle accident on April 6, 1990 involving the defendant. On September 11, 1992, the motion judge granted defendant Manuel B. Daconceicao summary judgment on the ground that the verbal threshold provisions of N.J.S.A. 39:6A-8a precluded Polk's suit.
On appeal, Polk argues that he suffered a lumbosacral strain and sprain and aggravated a pre-existing permanent hip injury and a right hip arthritic condition which places his injury within type six, seven or eight as statutorily described in N.J.S.A. 39:6A-8a. He contends that the motion judge erred in evaluating both the medical proofs and the evidence demonstrating the significant impact these injuries had upon his life. See Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992); Dabal v. Sodora, 260 N.J. Super. 397, 616 A.2d 1297 (App.Div. 1992). We disagree with these contentions, and accordingly we affirm.
Permeating the evaluation of the proofs submitted is the fact that just prior to the date of the accident, plaintiff was fifty-seven year old, weighed 390 pounds, was permanently disabled and was unemployed and unemployable. Admittedly, these facts evoke sympathy. Nevertheless, our objective evaluation of the record *571 convinces us that the motion judge properly granted summary judgment.
Plaintiff was evaluated on the date of the accident in the emergency ward of the Irvington General Hospital. On arrival at the hospital, he was ambulatory with the assistance of his own crutches. He complained of pain to the right neck and right rib area in the mid-back. He gave a medical history of having sustained a right hip injury six years previously and of right hip arthritis. A radiology report revealed:
Right rib cage; no evidence of fracture or intrinsic bony abnormalities. Conclusion, radiographically normal ribs. Cervical spine, no evidence of fracture or subluxation. Intervertebral disc space narrowing is seen from C4 through C7. Associated mild anterior osteophytosis is noted. Conclusion: No evidence of fracture or subluxation. Mild spondylosis deformans from C4 through C7 as discussed above.
Based on this initial evaluation, plaintiff's condition was described as "stable," he was released to the care of his personal physician and was given a prescription for a muscle relaxant. He was ambulatory, with the assistance of his own crutches on leaving the hospital.
Three days later, on April 9, 1990, plaintiff consulted his personal physician, Dr. Alexandra E. Rubin, complaining of headaches and pain in the neck and lower back. His doctor noted that plaintiff ambulated with two axillary crutches.
The examination revealed the following pertinent data:
Examination of the cervical spine revealed 20-25 degrees limitation of rotation, painful extension, pain on palpation of the spine. The paracervical and upper trapezius muscles were very tender. Range of motion in the shoulder was not limited, but internal rotation was painful. Examination of the lumbo-sacral spine revealed limitation of forward flexion to 75-80 degrees; some limitation of lateral bending; pain and tenderness or palpation over the spine and paravertebrally. Range of motion in the right joint was limited, forward and backward elevation, abduction and rotation. Straight leg raising test was positive at 60 degrees on the left.
Diagnosis: Cervical Sprain/Strain. Lumbo-Sacral Sprain/Strain. Pre-Existing: OA, Obesity.
*572 As a result of this examination, plaintiff was given another prescription for a muscle relaxant and a course of physical therapy was begun.
Plaintiff continued to see this physician and on June 4, 1990, Dr. Rubin noted:
The patient stated he did not have pain in the neck. There was full range of motion in the cervical spine and mild tenderness of the paracervical and upper trapezius muscles. Range of motion in the lumbo-sacral spine was limited. Forward flexion and lateral bending were painful. The paraspinal muscles were tender. Physical therapy was continued....
On each of his next three office visits, plaintiff's complaints continued to diminish. On July 16, 1990, he was given a T.E.N.S. unit instead of ultrasound. The records reflect: "He was still making very slow progress. Low back pain was milder, but he continued to complain of stiffness. Palpation of the lower lumbar and sacral spine was painful. The patient was given oral anti-inflammatory analgetics."
The final treatment occurred on August 1, 1990. The physician's notes state:
... I found Mr. Polk to have obtained the maximum therapeutic benefit. Physical therapy was discontinued.
On discharge: The patient still experienced intermittent low back pain, that increased on movements, in bad weather and stiffness. He stated that it was more difficult for him to walk with his crutches. There was pain on palpation of the lower lumbar and sacral spine and paravertebrally.
There was mild to moderate tenderness of the paraspinal muscles.
The cervical sprain/strain was resolved.
The condition of the lumbo-sacral spine is permanent.
In all medical probability the patient will have exacerbations of low back pain that will require medical attention. Prior to the accident the patient had limited range of motion in the right hip, but he did not experience any pain.
Final diagnosis: Cervical Sprain/Strain.
Lumbo-Sacral Sprain/Strain.
Aggravation of a Pre-Existing OA of the Lumbo-Sacral Spine.
Between August 1, 1990 and July 30, 1992, plaintiff was not treated or examined by any physician. He was seen, however, by Dr. Rubin on July 30, 1992 for a re-evaluation. We can infer that this visit was conducted in anticipation of the return day of *573 defendant's motion for summary judgment scheduled for September 11, 1992. Dr. Rubin's report of September 1, 1992, generated by this visit, reviewed the status of the plaintiff as of August 1, 1990. In actuality, this report merely mimics the earlier diagnoses/prognoses of her August 1, 1990 report, with the exception that Dr. Rubin mentions  for the first time  that prior to August 1, 1990, plaintiff "developed low back pain on prolonged sitting, while driving his car. He had difficulty to get in and out of bed and dressing."
The report proceeds to discuss the re-evaluation examination of July 30, 1992:
On examination I found range of motion in the lumbosacral spine to be limited to 75-80 degrees in flexion (normal was  90 degrees). There was limited lateral bending. Straight leg raising test was positive at 60 degrees on the right and 70 degrees on the left. (It indicated muscle spasm, or herniated disc, or disc bulge, or peripheral neuropathy.)
Palpation of the right hip was painful and there was pain on movements.
We note that the range of motion measurements on July 30, 1992 are essentially the same as reported on the date of Polk's initial treatment on April 9, 1990, although straight leg raising has increased from 60 degrees to 70 degrees.
The crucial question is whether these findings as of July 30, 1992, are sufficient objective medical evidence to withstand a defense motion for summary judgment.
Although limitations of motion based on measurement may be useful to a physician in the diagnosis of injury, measurements of limitation of motion alone are insufficient to overcome the verbal threshold imposed by N.J.S.A. 39:6A-8a. See Oswin v. Shaw, supra, 129 N.J. at 320, 609 A.2d 415. In addition, the statement "it indicated muscle spasm, or herniated disc or disc bulge, or peripheral neuropathy" is merely a differential diagnosis based upon the patient's subjective statements of pain. The report lacks any objective medical evidence upon which to predicate a probable cause for the limitation of motion. Plaintiff's medical documentation ultimately reduces to range-of-motion and medical causation findings based solely upon the very subjective *574 complaints that the Supreme Court found inadequate in Oswin v. Shaw. Ibid.
Dr. Rubin, however, tries to obscure this evidential deficit by emphasizing the impact the accident has allegedly had on plaintiff's life:
The injury sustained left the patient significant limitation of use of his lumbosacral spine and right hip, preventing him from performing all the usual and important activities of daily living such as:
1) Prior to April 6, 1990 the patient was able to ambulate with a straight cane. He had to ambulate with two axillary crutches after the accident, even ambulation with crutches induced low back pain and pain in the right hip.
2) Since the accident low back pain interferred with his sleep and woke him up many times at night.
3) Since the accident he required a special mattress and a piece a [sic] plywood under it.
4) Since the accident very often he was unable to go to the kitchen on the first floor from his bedroom on the second floor, because it was more difficult for him to climb the stairs even with two crutches.
5) Since the accident he could not go shopping any longer, because of the low back and right hip pain and difficulty in using the crutches.
6) Since the accident he could not babysit any longer.
The patient did not have low back pain prior to the accident.
In my opinion again, the condition of the patient's lumbo-sacral spine was permanent. In all medical probability there was a herniated nucleus pulposus or bulge of a lumbar disc (limitation of range of motion, constant pain, positive straight leg raising test.)
I referred Mr. Polk to Edgewater Imaging Center for MRI of the lumbo-sacral spine, but during the beginning of the test the patient developed shortness of breath and the test could not be completed.
Final diagnosis: S/P Injury to the Cervical Spine.
Cervical Sprain/Strain-Resolved.
S/P Injury to the Lumbo-Sacral Spine.
Probable Herniated Nucleus Polposus, or Disc Bulge.
Pre-Existing: OA of the Right Hip, Aggravated by the MVA on April 6, 1990.
Obesity.
We assume that matters such as items "4)" to "6)" are in the medical report to circumvent the verbal threshold. We find it significant that none of the complaints summarized were ever mentioned to Dr. Rubin during the course of Polk's treatment between April 9, 1990 and August 1, 1990. Moreover, no report *575 rendered by Dr. Rubin provides any of the requisite objective evidence to corroborate these complaints or to correlate these complaints to the trauma of April 6, 1990.
This list of complaints, without supporting objective corroborative medical evidence, is another example of "parroting" specifically admonished by our Supreme Court in Oswin v. Shaw, supra, 129 N.J. at 320, 609 A.2d 415. An expert opinion needs supporting objective data and discussion where the expert claims a cause-and-effect relationship between a patient's subjective complaints and a traumatic event. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981).
A diagnosis of aggravation of a pre-existing injury or condition must be based upon a comparative analysis of the plaintiff's residuals prior to the accident with the injuries suffered in the automobile accident at issue. This must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma. Without a comparative analysis, the conclusion that the pre-accident condition has been aggravated must be deemed insufficient to overcome the threshold of N.J.S.A. 39:6A-8a.
Oswin v. Shaw, supra, 129 N.J. at 318-319, 609 A.2d 415, articulated two standards for determining whether an injury meets the statutory threshold  one objective and the other partially subjective and partially objective. Under the objective standard, the plaintiff must show a material factual dispute "by credible, objective medical evidence." Id. at 314, 609 A.2d 415. Under the dual subjective-objective standard, the plaintiff must show subjectively that the injury has had a serious impact on his or her life, Id. at 318, 609 A.2d 415, but must objectively show causation attributable to the accident.
We specifically analyzed the subjective standard in Dabal v. Sodora, supra, and in Phillips v. Phillips, 267 N.J. Super. 305, 631 A.2d 564 (App.Div. 1993). In concluding that Dabal had demonstrated proof of the serious impact on her life, we related the *576 activities which Dabal claimed she could not do to the objective medical evidence offered by her, to support the conclusion that the injury was permanent and significant within the meaning of N.J.S.A. 39:6A-8a, Dabal v. Sodora, supra, 260 N.J. Super. at 401-02, 616 A.2d 1297. We similarly construed the Phillips claim in Phillips v. Phillips, supra, 267 N.J. Super. at 317-318, 631 A.2d 564.
In this case, we need not determine if the limitations or interference in plaintiff's life constitute a "serious impact," as those complaints have not been objectively related to his purported objective medical proof of injury. Without that crucial nexus, a delineation of a series of lifestyle limitations cannot be utilized to meet the tort threshold requirements of N.J.S.A. 39:6A-8a. Dr. Rubin has offered no objective medical basis whatsoever to substantiate plaintiff's complaints nor to causally connect these complaints to the accident rather than to plaintiff's serious pre-existing prior medical condition. The absence of any subjective complaints between April 9, 1990 and August 1, 1990, is further supportive of our conclusion that the plaintiff's claim is barred by N.J.S.A. 39:6A-8a.
Lastly, the doctor's final opinion that "the condition of the patient's lumbo-sacral spine was permanent," is of no assistance, as it does not delineate between the pre-existing residuals of his prior accident, the pre-accident status of his pre-existent arthritic condition, and the effect of the trauma of April 6, 1990 on those pre-existing medical problems. Nor does the opinion exclude any other trauma occurring between August 1, 1990 and September 1, 1992.
We note that the plaintiff was referred for an MRI evaluation of his lumbo-sacral spine. Plaintiff's girth, however, precluded any such examination. The report of Dr. James McHale dated August 20, 1992 states:
Douglas Polk appeared for an MRI at Edgewater Diagnostic Imaging on August 12, 1992. Due to the patient's body habitus, he could not properly fit into the imaging space of the magnet. Initially, his abdomen was compressed against the *577 roof of the magnet. Due to his inability to properly breathe, he requested to be removed. Therefore, clear images were not obtained.
Plaintiff failed to seek a continuance of the motion for summary judgment on September 11, 1992 in an effort to explore other available diagnostic techniques necessary to objectively support the medical opinion of Dr. Rubin. A judge hearing motions can only predicate his decision on the medical information submitted before the return date. Potential, possible favorable medical information is not only speculative, but without a request for a postponement, it cannot be considered. The trial court properly granted the motion for summary judgment.
We affirm.