883 A.2d 419 (2005)
380 N.J. Super. 566
Doris LUCKY & Walter Lucky, her husband, Plaintiffs-Appellants,
v.
Matthew HOLLAND & Jack Holland, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 2005.
Decided October 12, 2005.
*420 Colligan & Colligan, attorneys for appellants (Edward M. Colligan, on the brief).
Connell Foley, attorneys for respondents (Brian G. Steller, Roseland, of counsel; Mr. Steller and Gregory E. Peterson, on the brief).
Before Judges COBURN, COLLESTER and LISA.
*421 The opinion of the court was delivered by
LISA, J.A.D.
Plaintiff, Doris Lucky,[1] appeals from a summary judgment dismissing her complaint for personal injuries arising out of a motor vehicle accident that occurred on May 24, 2001 for failure to satisfy the "limitation on lawsuit" threshold under the 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-8a.[2] The judge found that plaintiff did not provide evidence sufficient to withstand summary judgment that she suffered a qualifying injury. The judge also found that plaintiff, who suffered a fall-down accident on May 11, 1996 in which some of the same body parts were injured as those affected by the May 24, 2001 motor vehicle accident, failed to provide a sufficient comparative analysis as required by Polk v. Daconceicao, 268 N.J.Super. 568, 634 A.2d 135 (App.Div.1993), comparing her residual injuries prior to the present accident with those suffered in the present accident.[3] We reverse.
Following the motor vehicle accident of May 24, 2001, plaintiff was transported by ambulance to a hospital where she was treated in the emergency room and released. About two months later, she came under the care of Sall/Myers Medical Associates. She underwent a course of physical therapy for a period of four months and continued being treated and evaluated by physicians at Sall/Myers over the next several years. During that time, various diagnostic tests were performed.
Before discussing the injuries plaintiff suffered in the May 24, 2001 accident, we set forth the injuries suffered in her prior accident on May 11, 1996. As a result of a fall in a supermarket, plaintiff injured her lower back and right knee. She was treated for those injuries by Sall/Myers, who rendered a final diagnosis of traumatic lumbar spine syndrome resulting from bulging discs at L4-5 and L5-S1, and a right knee syndrome. A June 19, 1996 MRI revealed mild bulging at L4-5 and L5-S1. A July 29, 1996 MRI revealed joint effusion associated with a small popliteal cyst of the right knee. Sall/Myers opined in a January 5, 1998 report that both injuries were "permanent in nature."
In the May 24, 2001 accident, plaintiff suffered injuries to her cervical spine, dorsal spine, lumbar spine, left shoulder, left knee and right knee. Therefore, a Polk analysis is required only with respect to injuries to the right knee and lumbar spine. Loftus-Smith v. Henry, 286 *422 N.J.Super. 477, 491, 669 A.2d 852 (App. Div.1996). Because the other injuries were to body parts not affected by the May 11, 1996 accident, no Polk analysis is required. Of course, with respect to all of the injuries, plaintiff is required to establish her injuries by credible, objective medical evidence. Oswin v. Shaw, 129 N.J. 290, 314, 609 A.2d 415 (1992).
To establish a qualifying injury under AICRA, a plaintiff must demonstrate by credible, objective medical evidence that he or she suffered a permanent injury, as defined in N.J.S.A. 39:6A-8a, caused by the accident. In a report dated June 9, 2004, Dr. Theodora Maio described her examination of plaintiff on May 12, 2004 and described her review of all medical records and reports of diagnostic tests pertaining to plaintiff's injuries suffered on May 11, 1996 and May 24, 2001.
We need not describe the physical examination in detail, but note that Maio observed and reported multiple objective findings with respect to all of the affected areas. These included spasm and limitation of motion in the cervical area, limitation of motion and crepitus in the left shoulder, spasm and limitation of motion in the lumbodorsal area, limitation of motion and crepitus in the left knee, and limitation of motion and crepitus in the right knee. All reported limitation of motion findings were observed and verified by Maio's physical examination in conjunction with other objective clinical findings. See Oswin, supra, 129 N.J. at 320, 609 A.2d 415; Cineas v. Mammone, 270 N.J.Super. 200, 210-11, 636 A.2d 1071 (App.Div.1994).
Maio listed all of the diagnostic studies she reviewed. She reviewed the June 19, 1996 MRI, revealing mild disc bulging at L4-5 and L5-S1 with no evidence of herniation. She reviewed the January 5, 1998 report of Dr. Bruce Johnson, a Sall/Myers physician, regarding the 1996 injury. That report included reference to the July 29, 1996 MRI of the right knee and a description of the results of that study, namely joint effusion associated with a small poplital cyst, with no definite meniscal tear, significant ligamentous injury or osteochondral fracture.
With respect to the May 24, 2001 injury, Maio reviewed MRI studies of the lumbar spine (September 10, 2001 and September 17, 2003), cervical spine (September 10, 2001 and September 18, 2003), and left shoulder (October 16, 2001). She also reviewed x-rays of the cervical spine, lumbosacral spine and left shoulder (July 31, 2001), and electrodiagnostic studies of the lumbar spine (October 31, 2001). Maio also reviewed other reports and records, which are itemized in her report.
Based upon her physical examination of plaintiff and her review and analysis of all medical records and diagnostic studies pertaining to the prior and present accidents, Maio rendered the following diagnosis:
1. Status post traumatic injury to the cervicodorsal spine being a hyperflexion/extension injury with sprain/strain with multilevel disc bulging C3-4 through T3-4 with residuals of diffuse cervicodorsal myositis and fibromyositis with loss of range of motion and cervical radiculopathy as manifested by radiating radicular pain and altered reflexes.
2. Status post traumatic injury to the left shoulder being a sprain/strain with impingement syndrome with residuals of diffuse left shoulder synovitis with loss of range of motion, power and function in this right hand dominant individual.
3. Status post traumatic injury to the lumbosacral spine being a hyperflexion/extension injury with sprain/strain with disc herniation at L3-4, L4-5 and disc bulging at L5-S1 and T11-12 and *423 T12-L1 with residuals of diffuse lumbosacral myositis and fibromyositis with loss of range of motion and lumbar radiculopathy as manifested by radiating radicular pain, altered reflex and electrodiagnostic studies.
4. Status post traumatic injury to the bilateral knees being contusions with sprains/strains with residuals of bilateral knee synovitis.
Maio then rendered her opinion regarding causation, distinguishing between those body parts that were affected by the 1996 and 2001 accidents and those that were affected only by the May 24, 2001 motor vehicle accident:
This patient had prior injuries to the low back and right knee, however, according to the patient, those injuries had healed and were asymptomatic for some time prior to this accident. The areas of the previous accidents were healed but re-injured as a result of this most recent event, therefore, represent an aggravation of a pre-existing injured part. However, the neck, left shoulder and left knee were not previously injured and are directly and causally related to the accident to which this report refers.
The neck, left shoulder and left knee are totally related to the accident of May 24, 2001. With regard to the lumbar spine, it is my opinion that 30% of the patient's residuals and findings are related to the prior accident and 70% to the accident of May 24, 2001. With regard to the right knee, 20% is related to the prior accident and 80% to the accident of May 24, 2001.
Maio opined that the injuries suffered by plaintiff are permanent and in all medical probability will not heal to normal function and will likely worsen and require further medical treatment.
We have no hesitancy in concluding that Maio's report provided ample credible, objective medical evidence of multiple injuries caused to plaintiff by the May 24, 2001 accident. With respect to her cervicodorsal spine, left shoulder and left knee, body parts unaffected by her 1996 accident, no Polk analysis is required.
With respect to the lumbosacral spine, the records from the 1996 accident revealed mild bulging at L4-5 and L5-S1. However, upon a review and analysis of the diagnostic studies and medical records pertaining to the 2001 accident, the diagnosis was disc herniation at L3-4 and L4-5, with continued disc bulging at L5-S1. Thus, based on objective diagnostic tests, combined with the medical opinion of plaintiff's treating physician, the pre-existing lumbar injury has been aggravated to a significant extent. Maio estimated that 30% of plaintiff's residual disability is attributable to the prior accident and 70% to the May 24, 2001 accident. Maio based her opinions differentiating plaintiff's lumbar injuries on objective medical evidence pre-dating and post-dating the May 24, 2001 accident. Therefore, her opinions in that regard are supported by "objective data and discussion where the expert claims a cause-and-effect relationship between a patient's subjective complaints and a traumatic event." Bennett v. Lugo, 368 N.J.Super. 466, 475-76, 847 A.2d 14 (App. Div.), certif. denied, 180 N.J. 457, 852 A.2d 193 (2004) (quoting Polk, supra, 268 N.J.Super. at 575, 634 A.2d 135).
We cannot say the same regarding the right knee. Maio's report fails to distinguish between prior and present injuries and resulting residuals, and renders only a conclusory opinion of aggravation with an apportionment of disability attributable to each injury. We agree with the motion judge that plaintiff did not provide an adequate Polk analysis with respect to her right knee injury.
*424 Except as stated in the preceding paragraph, we are satisfied that plaintiff met her burden of providing sufficient credible, objective medical evidence which, when viewed most favorably to her, could lead a rational factfinder to reasonably find that she suffered permanent injuries as a result of the accident of May 24, 2001. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Accordingly, we reverse the summary judgment dismissing the complaint and remand for further proceedings.
Reversed and remanded.
NOTES
[1] Doris Lucky's husband, Walter Lucky, is also a plaintiff, asserting a per quod claim.
[2] Plaintiff argued in the trial court and before us that because her declaration sheet and Buyer's Guide did not expressly state that the limitation on lawsuit option required a serious life impact to establish a qualifying injury she should not be bound by the limitation on lawsuit option. During the pendency of this appeal, the Supreme Court decided DiProspero v. Penn, 183 N.J. 477, 874 A.2d 1039 (2005), holding that the limitation on lawsuit option does not require proof of serious life impact. Therefore, we deem the argument moot and do not address it.
[3] From our reading of the judge's oral decision, it appears the judge did find that the injuries caused a substantial impact on plaintiff's life. In their appellate brief, defendants contend that although the judge found sufficient evidence of substantial life impact to withstand summary judgment, the judge further found that plaintiff's proofs were deficient on the causal relationship between her limitations and the injuries sustained in the present accident. That reading of the judge's findings does not comport with ours. However, we need not address the issue because substantial life impact is no longer required to vault the AICRA threshold. DiProspero v. Penn, supra, 183 N.J. 477, 874 A.2d 1039.