**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2553-23

CHARLOTTE ZAVIS,

    Plaintiff-Appellant,

v.

NJM INSURANCE
COMPANY,

    Defendant-Respondent.

_____

Submitted April 8, 2025 – Decided May 15, 2025

Before Judges Gilson, Firko, and Bishop-Thompson (Judge Bishop-Thompson concurring in part and dissenting in part).

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0639-22.

Lowenthal & Abrams, PC, attorneys for appellant (Regina M. McIlvaine, of counsel and on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent (Everett E. Gale, III, of counsel and on the brief; Erica E. Bross, on the brief).

PER CURIAM

Plaintiff Charlotte Zavis filed a claim against defendant New Jersey Manufacturers Insurance Company (NJM) for underinsured motorist (UIM) coverage arising from a February 1, 2019 motor vehicle accident after the third-party case settled.  Plaintiff alleged she sustained personal injuries.  She appeals from the March 15, 2024 order granting NJM's motion for summary judgment and dismissing her complaint with prejudice because she failed to provide a comparative medical analysis addressing her extensive medical history and pre-existing spinal injuries compared to her alleged injuries from the subject accident.  We affirm.

I.

Our review of an order granting summary judgment requires our consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law."  Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).  Here, we discern the following facts from our review of the parties' Rule 4:46-2 statements and the motion record, viewed in the light most favorable to plaintiff.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

On the date of the accident, plaintiff, who was then seventy-four-years-old, was a front seat passenger in a motor vehicle that was struck on the front end by a vehicle that turned left in front of her vehicle. Plaintiff is subject to the limitation on lawsuit option under N.J.S.A. 39:6A-8(a). In her complaint, plaintiff did not assert an aggravation or exacerbation of any pre-existing injuries. During discovery, plaintiff alleged that she injured her shoulders, neck, and back as a result of the automobile accident.

On April 4, 2019, plaintiff underwent magnetic resonance imagings (MRIs) of the lumbar and cervical spines. Her treating doctor and expert, Dr. Wayne Fleischhaker, a board-certified anesthesiologist and pain management specialist, reviewed the MRI films and in his May 14, 2023 report, opined that plaintiff sustained permanent injuries to her neck and back because of the automobile accident. Specifically, Dr. Fleischhacker opined plaintiff sustained herniations at C3-4 and C5-6, and bulging discs at C4-5, C6-7, L3-4, and L4-5, with lumbar radicular syndrome. Dr. Fleischhaker also opined in his report that plaintiff suffered an "aggravation of pre-existing asymptomatic degenerative changes as a result of the motor vehicle accident that occurred on February 1, 2019." Dr. Fleischhaker stated that as a result of plaintiff's "injuries, she will

suffer accelerated degeneration of her spine, progressive stiffness, loss of function and pain."

Discovery revealed that plaintiff had a pre-existing back condition and had undergone MRIs of her lumbar spine on June 12, 2000, and April 23, 2016. The 2016 MRI was taken after plaintiff had a slip and fall injury. Plaintiff's 2016 medical records state she complained of "pain [in] low back radiating into right lower extremity" ten days after her slip and fall injury and mentioned disc bulges at L3-4 and L4-5.

The record also shows plaintiff underwent an MRI of her lumbar spine in 2000, which revealed "diffuse disc bulge with mild spinal stenosis at L4-5. Diffuse disc bulge at L3-4." The 2000 MRI report also noted "multilevel loss of the normal T2 disc signal consistent with multilevel mild degenerative disc disease."

At her deposition, plaintiff—then eighty years old—denied having any prior neck injuries and testified she did not remember having any prior back injuries. In his report, Dr. Fleischhaker stated that plaintiff complained to him about headaches, neck and low back pain, radiating pain to her right arm and right leg, and orthopedic complaints to her right shoulder and right wrist. Plaintiff did not report any pre-existing injuries to Dr. Fleischhacker.

4

Nevertheless, in his progress notes dated September 10, October 8, and December 9, 2019, and February 6, 2020, concerning plaintiff's treatment, Dr. Fleischhacker also stated plaintiff had "cervical disc degeneration, mid-cervical region, unspecified level," which was being assessed.[1]

In his expert report, Dr. Fleischhacker opined that plaintiff suffered permanent injuries to her cervical and lumbar spines and an aggravation of pre-existing asymptomatic degenerative changes in the spine. Plaintiff's expert did not state whether the "degenerative changes" were in just the lumbar spine or just the cervical spine or both. Moreover, the expert did not provide a comparative analysis of plaintiff's pre-accident and post-accident conditions and injuries.

NJM moved for summary judgment contending that plaintiff could not prove causation without a comparative analysis of her pre-accident and post-accident conditions because she had the same conditions before the accident. NJM argued that to prove negligence, plaintiff has the burden to establish four basic elements: duty, breach, causation, and resulting damages, and that the negligence was the proximate cause of the injury. NJM contended that it was

---

[1] Dr. Fleischhacker's records indicate plaintiff's diagnosis as "M50.320," which describes "other cervical disc degeneration, mid-cervical region, unspecified level."

not enough for plaintiff to allege she has neck and back pain; rather, she must prove that she sustained injuries or damages as result of the automobile accident.

NJM argued the issues concerning medical causation are "complex" in light of plaintiff's prior history of neck and back "pain and treatment," which occurred before the 2019 accident. NJM asserted plaintiff cannot maintain a claim of personal injury without expert medical opinion establishing that her injuries were caused by the February 1, 2019 accident, and were not a "continuation of her pre-existing degenerative disc disease in her spine that was well-documented in her MRI reports and treatment records." NJM posited the average juror "cannot and should not" engage in a comparative medical analysis because such a determination is "beyond the ken" of a layperson and "beyond the realm of common knowledge."

Plaintiff opposed NJM's motion for summary judgment. Plaintiff countered that no comparative analysis is required because in her complaint, she did not assert an aggravation or exacerbation of any pre-existing injuries. Plaintiff maintained that NJM failed to produce any evidence of her prior "injuries, treatment, complaints, diagnostic tests or any reference" to any prior neck injuries. According to plaintiff, since she did not allege an aggravation of pre-existing injuries, she is not required to produce comparative medical

6

evidence on the issue of causation under <u>Davidson v. Slater</u>, 189 N.J. 166, 181 (2007). Plaintiff avers that in a "non-aggravation AICRA[2] case" as here, the <u>Davidson</u> Court held plaintiff does not have to produce a comparative analysis to establish causation in order to vault the verbal threshold.

In reply, NJM argued that plaintiff failed to allege aggravation of pre-existing injuries despite "strong evidence" she had a pre-existing condition of her lumbar spine prior to the 2019 accident. NJM pointed out plaintiff denies aggravation, yet Dr. Fleischhacker opined that plaintiff had aggravation. Because plaintiff's expert opined about her pre-existing condition and there is clear evidence of a prior lumbar condition, NJM argued plaintiff was required to produce a comparative analysis of her lumbar and cervical spine before and after the 2019 accident and provide an expert opinion distinguishing her prior lumbar and cervical conditions from the alleged injuries related to the automobile accident.

On March 15, 2024, the court conducted oral argument on NJM's motion. That same day, the court entered an order granting NJM's motion for summary judgment and issued a comprehensive written statement of reasons. The court

---

[2] "AICRA" stands for the "Automobile Insurance Cost Reduction Act," N.J.S.A. 39:6A-1.1 to -35.

A-2553-23

found plaintiff's medical records from her 2016 slip and fall state she underwent an MRI of the lumbar spine in 2000 and 2016. The court highlighted that plaintiff's expert, Dr. Fleischhacker, stated she sustained an "aggravation of pre-existing, asymptomatic degenerative changes," and the record is "replete" with prior MRI reports demonstrating she had a "pre-existing injury and degenerative status."

The court was unpersuaded by plaintiff's argument that she did not plead an aggravation or exacerbation of any pre-existing injuries. Citing J.W. v. L.R., the court determined a comparative analysis is "absolutely necessary" in cases involving medical causation because the issues are "complex." 325 N.J. Super. 543, 548 (App. Div. 1999). The court concluded plaintiff had to produce medical expert evidence to establish that she sustained injuries from the 2019 automobile accident. A memorializing order was entered. This appeal followed.

On appeal, plaintiff reprises the argument she made to the court that since she did not plead aggravation of a pre-existing injury as a theory of her claim, no comparative analysis is required, and reversal is warranted.

II.

We review a grant of summary judgment using the same standard that governs the motion judge's decision. RSI Bank v. Providence Mut. Fire Ins.

Co., 234 N.J. 459, 472 (2018) (citing Bhagat, 217 N.J. at 38). Under that standard, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38).

We must give the non-moving party "the benefit of the most favorable evidence and most favorable inferences drawn from that evidence." Est. of Narleski v. Gomes, 244 N.J. 199, 205 (2020) (quoting Gormley v. Wood-El, 218 N.J. 72, 86 (2014)); however, we owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp., 224 N.J. at 199).

A-2553-23

The holder of every standard automobile liability insurance policy must select one of two tort options: the "[l]imitation on lawsuit option" or the "[n]o limitation on lawsuit option." N.J.S.A. 39:6A-8. A person covered by an insurance policy with the limitation on the lawsuit option enjoys only "a limited right of recovery" for noneconomic damages sustained in automobile collisions. DiProspero v. Penn, 183 N.J. 477, 486 (2005). When plaintiffs are covered by the limitation on lawsuit option, they are bound to the so-called "verbal threshold" and may only recover in tort for non-economic damages if they "vault" the threshold. Davidson, 189 N.J. at 181. To vault the verbal threshold, a plaintiff is generally confronted with two burdens.

First, to seek non-economic damages, a plaintiff with the verbal threshold must show that "as a result of bodily injury, arising out of [defendants'] . . . operation, . . . or use of . . . [their] automobile[s] . . . in this State . . . [they suffered] a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement."[3] N.J.S.A. 39:6A-8(a). A "permanent injury" is one that "has not healed to function normally and will not heal to function normally with further medical treatment." Ibid.

---

[3] Alternatively, plaintiffs may show they "sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; [or] loss of a fetus . . . ." N.J.S.A. 39:6A-8(a).

Second, a plaintiff with the verbal threshold must show that their injuries were proximately caused by defendants' negligence. Davidson, 189 N.J. at 185. "[T]he issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence. There must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence, if found by the jury, and the resulting injury." Ibid. (internal quotation marks and citations omitted).

Once a plaintiff proves permanent injury as to one body part, the verbal threshold imposes no impediment to recovery for non-economic damages caused by injuries to other body parts, regardless of whether those injuries are permanent. Johnson v. Scaccetti, 192 N.J. 256, 261-62 (2007) abrogated on other grounds, Cuevas v. Wentworth Grp., 226 N.J. 480, 506 (2016) (stating "that once a plaintiff suffers a single bodily injury that satisfies a threshold category, the jury may consider all other injuries in determining noneconomic damages").

The Court in Davidson addressed the evidentiary burdens of a plaintiff who had a history of prior injuries but did not plead aggravation in seeking damages for injuries allegedly caused by a single recent automobile collision. Davidson, 189 N.J. at 169. The trial court had dismissed plaintiff's complaint

11

on summary judgment, holding that the plaintiff was required to distinguish between the prior injuries and those caused by the new accident. Ibid. The Court held that the trial court erred, concluding that the plaintiff could "carry her burden of moving forward in her non-aggravation case by demonstrating the existence of a 'permanent' injury resulting from the automobile accident without having to exclude all prior injuries to the same body part." Id. at 170. The Court explained:

> When a plaintiff alleges aggravation of pre-existing injuries as the animating theory for the claim, then plaintiff must produce comparative evidence to move forward with the causation element of that tort action. When a plaintiff does not plead aggravation of pre-existing injuries, a comparative analysis is not required to make that demonstration. AICRA does not impose on plaintiff any special requirement for a comparative-medical analysis in respect of causation in order to vault the verbal threshold.
>
> [Ibid.]

The Court grounded its holding in "basic tort principles of causation and burden allocation as between plaintiffs and defendants." Ibid. The need for a comparative analysis depends "on traditional principles of causation and burden allocation applicable to tort cases generally." Id. at 184. The Court recognized that a plaintiff who does not provide a comparative analysis may be caught flat-footed, if a defendant on summary judgment offers evidence "that no reasonable

12

fact-finder could conclude that the defendant's negligence caused plaintiff's alleged permanent injury." Id. at 187-88.

"When this defense is raised, the [plaintiff] has the burden of proving that the [injury] at issue is causally linked to either (1) an aggravation of that injury or condition, or (2) a new injury independent of that pre-existing injury or condition." Bowe v. N.J. Mfrs. Ins. Co., 367 N.J. Super. 128, 138 (App. Div. 2004).

In this case, based upon our de novo review of the record, we conclude NJM's motion for summary judgment was properly granted. Not only did Dr. Fleischhacker's expert report fail to establish an apportionment of damages as to each accident, but the report also fails to establish the comparative analysis required in light of his opinion that plaintiff suffered an aggravation of pre-existing asymptomatic degenerative changes in the spine. Davidson, 189 N.J. at 186. Dr. Fleischhacker opined that because of plaintiff's injuries to her cervical and lumbar spine "she will suffer accelerated degeneration of her spine, progressive stiffness, loss of function and pain." What plaintiff's expert failed to do, however, was to explain what part of those injuries were due to plaintiff's documented pre-existing conditions and what part of plaintiff's injuries were caused by the 2019 automobile accident. In that regard, a jury would be left to

speculate as to whether plaintiff's pre-existing conditions affected just her lumbar spine or also affected her cervical spine.

We reject plaintiff's argument that since she did not allege aggravation or exacerbation of any pre-existing injuries in her complaint or in her answers to interrogatories or at her deposition, a comparative analysis was not required. Whether a plaintiff alleges an aggravation of a pre-existing injury or not, the defendant has the right to raise the issue of prior injuries and seek discovery on them.  Id. at 187.

In Polk v. Daconceicao, we held that a physician must base his or her expert testimony as to a "diagnosis of aggravation of a pre-existing injury or condition . . . upon a comparative analysis of the plaintiff's residuals prior to the accident with the injuries suffered in the automobile accident at issue."  268 N.J. Super. 568, 575 (App. Div. 1993).  The foundation for such a diagnosis "must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma."  Ibid.

In short, plaintiff was required to serve a comparative medical analysis because discovery revealed her pre-existing spinal conditions, and her expert stated she had pre-existing cervical herniations and lumbar bulging discs on the record as it stood on the return date of the summary judgment motion.

14

Moreover, without the proper comparative medical analysis, the jury would be left to speculate whether plaintiff's present spinal injuries were aggravated by the 2019 accident or were caused by the accident. To the extent that plaintiff wants to claim damages only for her neck injuries, the record and plaintiff's expert report do not allow a jury to make that evaluation. It was incumbent upon plaintiff to serve a comparative medical analysis whether aggravation of a pre-existing injury was pled in the complaint or not.

The expert's failure to have considered plaintiff's degenerative changes to her entire spine—cervical, thoracic, and lumbar—in concluding her injuries were related to the February 1, 2019 accident makes his report a classic example of a net opinion, "[t]hat is, an expert's base opinion that has no support in factual evidence or similar data." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). The Court warned eighteen years ago that "the plaintiff who does not prepare for comparative medical evidence is at risk of failing to raise a jury-worthy factual issue about whether the subject accident caused the injuries." Davidson, 189 N.J. at 188.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2553-23

_____

**BISHOP-THOMPSON, J.A.D.**, concurring in part and dissenting in part.

I agree with the majority's conclusion that plaintiff failed to provide a comparative analysis addressing her medical history and pre-existing lumbar injury; therefore, summary judgment should be partially affirmed. I agree that the objective medical evidence from the 2000 and 2016 lumbar injuries is sufficient to warrant Dr. Fleischhaker providing an opinion that addresses the relationship between the pre-existing lumbar injuries and the 2019 lumbar injury. In that regard, the Dr. Fleischhaker's narrative report falls short.

I respectfully dissent from the majority's broad interpretation of <u>Davidson,</u> which requires plaintiff to present a comparative analysis for her alleged new cervical injury, which Dr. Fleischhacker causally related to the accident. The record lacks credible medical evidence of a pre-existing cervical injury.

Further, pursuant to <u>Rule</u> 4:46-2(c), the majority fails to afford plaintiff all reasonable permissive inferences from the record evidence supporting her claim. Accordingly, I conclude plaintiff was not required to provide a comparative cervical analysis because she did not plead an aggravation of pre-existing cervical injury in her complaint nor was aggravation the theory of her case. <u>Davidson</u>, 189 N.J. at 185

A plaintiff must prove the existence of a permanent injury with objective clinical evidence. Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 234 (App. Div. 2020). A plaintiff bears the burden to prove the element of causation through "introduc[ing] evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." Davidson, 189 N.J. at 185. (quoting Reynolds v. Gonzalez, 172 N.J. 266, 284 (2002)). Thus, proximate cause is ordinarily a fact issue to be resolved by a jury. See Perez v. Wyeth Lab'ys Inc., 161 N.J. 1, 27 (1999).

I part company with the majority's conclusion that plaintiff had a history of herniated discs of the cervical spine. Here, NJM contends the multilevel mild degenerative disc disease at T2 revealed in plaintiff's 2000 MRI of the lumbar spine supports Dr. Fleischhacker's diagnosis and opinion of an aggravation of pre-existing degenerative changes to the spine. The 2000 and 2016 hospital records are devoid of any neck complaints or that an MRI was performed on plaintiff's cervical spine, which is consistent with plaintiff's deposition testimony. There is uncontroverted objective medical evidence in the record that plaintiff alleges a new neck injury because of the 2019 accident.

I disagree with the majority's conclusion that the record and the plaintiff's expert report do not provide a sufficient basis for a jury to evaluate plaintiff's damages claim for her neck injuries.  Following the accident, plaintiff complained of headaches, neck, and low back pain with radiation to the right arm and right leg, and orthopedic complaints to the right shoulder and right wrist because of the 2019 accident.  The initial progress notes—October 8, 2019, and December 3, 2019—show plaintiff's evaluation revealed "ongoing spams" of the cervical spine.  Dr. Fleischhacker diagnosed plaintiff with "cervical radiculopathy," "lumbar HNP/bulge."  She was treated for "cervical disc degeneration, mid-cervical region, unspecified level."

The February 6, 2020 progress note stated plaintiff's evaluation revealed "ongoing paracervical and trapezius spasm" of the cervical spine and "ongoing paralumbar spasm with increased lordosis."  She was treated for cervical radiculopathy.  In the May 14, 2023 narrative report, Dr. Fleischhacker reviewed the 2019 MRI of the cervical spine, made a diagnosis, and stated:

> It is my opinion, within a reasonable degree of medical probability, that [plaintiff] suffered herniated C3-4, C5-6, bulging C4-5, C6-7, L3-4 and L4-5 discs with lumbar radicular syndrome and an aggravation of pre-existing, asymptomatic degenerative changes as [a] result of the motor vehicle accident that occurred on February 1, 2019.  These injuries are permanent as they have not and will not heal to their pre-injury condition.

3

> As a result of [plaintiff's] injuries, she will suffer accelerated degeneration of her spine, progressive stiffness, loss of function and pain. Future treatment will be necessary including medication, physical therapy, pain management and surgery cannot be ruled out.

We have found objective evidence of muscle spasm sufficient to satisfy the verbal threshold. Cavanaugh v. Morris, 273 N.J. Super. 38, 41 (App. Div. 1994) (holding plaintiff's physician's report of "continuing spasm long after the accident" satisfied the objective medical evidence requirement); Owens v. Kessler, 272 N.J. Super. 225, 232 (App. Div. 1994) (muscle spasms that are persistent and present twenty-six months after the cessation of active treatment was prima facie evidence of a permanent injury); Cineas v. Mammone, 270 N.J. Super. 200, 211 (App. Div. 1994) (finding the treating physician's diagnosis of several instances of cervical and lumbar spasm was an objective assessment that satisfied the verbal threshold).

The majority also concludes that Dr. Fleischhacker's opinion regarding the cervical and lumbar spine will cause plaintiff to "suffer accelerated degeneration of her spine, progressive stiffness, loss of function and pain" but did not explain those injuries pre- and post-2019 accident. As a result, the jury will be left to speculate as to whether plaintiff's pre-existing conditions affected her lumbar spine or also affected her cervical spine. Accordingly, the majority

concludes that Dr. Fleischhacker's narrative report is a classic example of a net opinion, lacking factual support in the record to account for plaintiff's degenerative changes throughout her spine.  NJM, however, did not move to strike the report as a net opinion; therefore, the issue is not properly before us. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Dr. Fleischhacker's narrative report is not a model of precision. Nevertheless, it is a scientific opinion presented "within a reasonable degree of certainty or probability," and no magic words are required.  State v. Fortin, 178 N.J. 540, 597 (2004), as clarified (Feb. 6, 2004); State v. Howard-French, 468 N.J. Super. 448, 466 (App. Div. 2021) ("[T]he certainty requirement does not oblige experts to use talismanic or magical words[.]") (internal quotation marks omitted), cert. denied, 248 N.J. 592 (2021).

The narrative report raises questions.  However, the record contains no indication Dr. Fleischhacker was deposed to further explore his diagnosis and expert opinion concerning the aggravation to plaintiff's pre-existing disc degenerative changes, in particular the "cervical disc degeneration, mid-cervical region, unspecified level," and the correlation to her neck injury.  See Congiusti v. Ingersoll-Rand Co., 306 N.J. Super. 126, 131 (App. Div. 1997) ("While the experts had not fully disclosed their theories in their reports, had they been

deposed . . . , their depositions might have fully revealed the bases for their eventual testimony."). Nonetheless, those questions could be answered at an N.J.R.E. 104 hearing.

As long-recognized, a medical expert's opinion based on credible medical evidence, like an MRI or X-ray, that a single disk herniation is causally related to the accident is a sufficient material issue of fact to support vaulting AICRA. Here, NJM never raised an issue with Dr. Fleischhacker's qualifications to review the MRI films. However, even if Dr. Fleischhacker was not qualified to review the objective diagnostic images, the record demonstrates Dr. Paresh Rijsinghani, a license radiologist, reviewed the cervical MRI images, determining that plaintiff had two cervical bulging discs and one cervical herniated disc in addition to the lumbar spine bulges as stated in the radiology report produced by plaintiff during discovery. Notably, Dr. Rijsinghani noted no disc desiccation or degenerative spinal issues.

In James v. Ruiz, Judge Sabatino comprehensively explained that a plaintiff's expert at trial may not testify to another expert's complex medical diagnosis under N.J.R.E. 703 and 808, but a plaintiff may present the testimony of a board-certified treating pain management expert and a radiologist that diagnosed the spinal injuries after reviewing the diagnostic images to meet

6

AICRA's burden of proof. 440 N.J. Super. 45 (2015). Thus, even if Dr. Fleischhacker was not qualified to review the MRIs, which is not apparent from the record and again not raised on appeal by NJM, plaintiff proffered the radiologist report to support objective credible medical evidence of new spinal injuries.

Here, the majority's conclusion conflicts with the principles established in Davidson and Johnson, asserting that the aggravation of the pre-existing back injury and of the pre-existing asymptomatic degenerative changes precludes plaintiff from recovering for a new neck injury. The majority does not consider an MRI of the cervical spine as a separate diagnostic test from the MRI of the lumbar spine; rather, the majority aggregates the cervical and lumbar injuries as the same pre-existing spinal condition.

I would further conclude that plaintiff need only show objective medical evidence as to each injury based on the functional anatomy of the spinal cord and the segments of the spine relevant to her alleged injuries—the cervical spine and nerves that control the neck, right shoulder, right arm, and right wrist and the lumbar spine and nerves at L3-4 and L4-5, which affect the lower back through to her right leg. Therefore, plaintiff's alleged cervical injury should be evaluated independently of her pre-existing lumbar injury to determine whether

 A-2553-23

she had provided sufficient credible, objective medical evidence demonstrating that her cervical injury was proximately caused by the 2019 accident.

Lastly, accepting NJM's conflated argument—that a comparative analysis is required when plaintiff did not plead an aggravation of a pre-existing cervical injury but her expert opined on the aggravation of pre-existing asymptomatic degenerative disease—would impose a new burden would be placed on plaintiff, contrary to the principles established in Davidson. NJM also argues Dr. Fleischhacker "would be articulating the 'animating theory' of the plaintiff's case" by opining on the aggravation of a pre-existing spinal condition. NJM misapprehends Davidson. The Court expressly stated in Davidson that "[a]t the very least, plaintiff will be forced to address causation before the fact-finder and properly may be held to the theory of the case as pled." Id. at 188 (citing Jardine Ests., Inc. v. Koppel, 24 N.J. 536, 542 (1957) (noting that parties are ordinarily limited in their proofs at trial to issues as set forth in pleadings and pre-trial order)).

I respectfully disagree with my colleagues that there are no genuine issues of material fact. I am persuaded plaintiff has presented objective medical evidence of both permanency and causation regarding her newly asserted neck

injury, and the issue of proximate cause of that injury should be decided by a jury.

Consequently, I respectfully concur in part with and dissent in part from the majority's decision.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2553-23